Cutler *v.* Thurlo.

EBENEZER F. CUTLER *& al. versus* DAVID THURLO.

The mortgagee of a ship, though the register or enrolment of the vessel stand in his name, if he has not taken the actual possession and control of the vessel mortgaged, is not answerable for supplies furnished by order of the mortgagor or by the master acting under his order.

So in case of a contract of sale, where the general owner agrees upon certain contingencies to convey the vessel to one, who takes the whole control of the same with a right to appropriate its earnings to his own use, such owner is not responsible for supplies furnished under the direction of the expected purchaser.

The hirer of a chattel cannot without special authority for the purpose, create a liability of the owner for the costs of repairs or supplies furnished by direction of the hirer and to aid him in deriving advantage from the thing hired : — and this principle applies equally to a vessel as to any other chattel.

Nor is this rule of law varied by the fact that the supplies were furnished with the expectation, that the owner was liable, and on his credit. He is not responsible except for supplies furnished by his consent personally, or that of his lawfully authorized agent.

THIS was assumpsit for articles furnished the schooner Caleb and owners in 1832, at the request of Jeremiah Thurlo, master. It was proved at the trial before WESTON C. J. that these goods were furnished upon the credit of the defendant, after inquiry into his circumstances, and were charged on the plaintiffs' books to the Caleb and owners and were such as the owners would be liable for, if Thurlo, as master, had authority to purchase them on their credit.

It appeared in evidence that Jeremiah Thurlo commenced building the schooner Caleb, that he hired and paid for men employed in building the vessel, that finding he was unable to finish it, the defendant, his father, advanced $400 on the hull of the vessel and paid $700, for sails, rigging, &c.; and that the vessel cost $1700. When finished the master builder gave a certificate that he built the vessel for the defendant, and the vessel was enrolled in his name at the custom house, on the 30th of May, 1832, when he made oath that he was the sole owner.

Jeremiah Thurlo, testified, that he built the Caleb on his own account, and sailed in her several years; that after she

was built he put her in his father's hands for security for the advances he had made; that she was to be conveyed to him when he should pay for her; that he kept an account of those advances, but that they never had a settlement; that he never gave any note for those advances nor was there any agreement for their payment by him; that while the vessel was in his possession he paid his father about $200, that about four years ago the vessel was seized at Liverpool, N. S. and his father took the vessel after procuring her release, and appointed another captain, and that his father had the right at any time to take the vessel from his possession; that he never gave his father any bill of sale or other writing respecting the vessel, that his father gave no agreement to convey the vessel on payment of what was due; and that while he, the witness, had possession, his father had no control of the vessel and received none of her earnings.

A verdict was returned for the plaintiffs, it being agreed, that if the jury found from the evidence that the defendant, at the time the supplies were furnished, was mortgagee of the vessel and out of possession (which upon being inquired of, they stated they did find) and the Court should be of opinion that such finding sustained the defence, the verdict is to be set aside and the plaintiffs to become nonsuit, otherwise, judgment is to be rendered on the verdict.

The case was argued in writing.

*H. Williams,* for the defendant, argued that the defendant, not having the management and control of the vessel at the time the supplies, to recover which this action was brought, were furnished, and being a mortgagee out of possession, was not liable to the plaintiffs. It has been repeatedly settled, that the mortgagee of a vessel, out of possession, is not liable for repairs and necessaries furnished the ship, the master not being his agent, as was the case here. *Colson* v. *Bonzey,* 6 Greenl. 474; *Thompson* v. *Snow & al.* 4 Greenl. 24; *Winsor* v. *Cutts & al.* 7 Greenl. 261; *Brooks* v. *Bonzey,* 17 Pick. 441; *Bixby & al.* v. *Franklin Ins. Co.* 8 Pick. 86; *Hacker & al.* v. *Young & al.* 6 N. H. R. 96.

*W. & C. J. Abbott,* for the plaintiffs, contended that *prima facie* the registered owner of a vessel was liable for supplies. *Westerdell* v. *Dale,* 7 T. R. 306; *Cox* v. *Reed,* 1 C. & P. 601. When the mortgagee holds himself out to the world as the owner, he is liable. *Tucker* v. *Buffington,* 11 Mass. R. 34; *Champlin* v. *Butler,* 18 Johns. 169; *Leonard* v. *Huntington,* 15 Johns. 298; *Marion* v. *Huntington,* 2 Conn. R. 215. This doctrine was recognized in *Brooks* v. *Bonzey,* 17 Pick. 441, and *Harrington* v. *Fry,* 2 Bing. 179. The defendant held himself out to the world as owner; he built two thirds of the vessel; procured the certificate of the master carpenter that he was the owner; caused the vessel to be enrolled in his own name, and made oath that he was the sole owner. No agreement existed at any time between father and son in relation to the vessel, to indicate that the latter had any interest in the vessel. The goods here were expressly furnished on the credit of the defendant, who thus held himself out as the owner, and for them he is liable. Abbot on Shipping, 16. No case can be found where the enrolled owner, to whom credit was given, has not been held answerable for supplies, though a mortgagee and out of possession, unless the person furnishing those supplies knew that he was a mortgagee and not in possession. The following cases show that when the plaintiffs had this knowledge, or when the credit was given to some other person, no action can be maintained against the mortgagee out of possession, and are therefore indirect authorities for the plaintiffs. *Ring* v. *Franklin,* 2 Hall, 1; *Thom* v. *Hicks,* 7 Cow. 697; *Baker* v. *Buckle,* 7 Moore, 349; *Twentyman* v. *Hart,* 2 E. C. L. R. 429; *Dowson* v. *Longster,* 16 E. C. L. R. 432.

The opinion of the Court was by

WHITMAN C. J. — The question presented for the consideration of the Court in this case is, who was the owner, *pro hac vice,* of the schooner Caleb, at the time the supplies were furnished, as charged in the account of the plaintiffs. It is believed to be a well settled principle, that one may be the general

owner of a chattel, and another the special owner for a particular purpose. And it is believed to be equally well settled, that, he who has the special property, cannot, without the knowledge and consent of the general owner, and without a special agency for the purpose, incur charges by way of repairs, or for the purpose of rendering the chattel more useful, and create a liability upon the general owner therefor. It was nevertheless, for sometime doubted, whether ships and vessels, under the mercantile law, did not present an exception to this principle. But a series of decisions, in the course of thirty or forty years, have dissipated all doubt upon the subject. Ships and vessels, in this respect, are now placed upon the *footing* of other chattels.

In a late case, *Reeve* v. *Davis & al.* 1 Adol. & Eu. 312, the Lord Chief Justice of the King's Bench remarked, " If the ship is let out to hire, I do not see how the owners are liable for the work done upon it, by order of the party hiring, more than the landlord, who lets a house." Hence it is, that the mortgagee of a ship, although the register or enrolment may stand in his name, if he has not taken the actual possession and control of the vessel mortgaged, is not held to be answerable for supplies furnished by order of the master, acting under the orders and authority of the mortgagor. *Fraser* v. *March,* 13 East, 239; Adol. & Eu. above cited; *Brooks* v. *Bonsey,* 17 Pick. 441 ; *McCartee* v. *Huntinton,* 15 Johns. 298 ; *Colson* v. *Bonzey,* 6 Greenl. 474, and cases there cited.

In the case at bar, the defence proceeded upon the ground, that the defendant was a mortgagee, who had not, at the time the supplies were furnished, taken possession under his mortgage. And the jury found, that such were the facts; and yet returned their verdict for the plaintiff. Under what instruction from the Court this was done does not appear. But the Judge has certified, " if the Court should be of opinion, that such. finding, upon the evidence, sustained the defence, the verdict is to be set aside, and the plaintiffs are to become nonsuit ; otherwise judgment is to be entered upon the verdict."

The facts detailed in the report of the Judge do not seem to exhibit the defendant and his son precisely in the predicament of mortgagor and mortgagee. The transaction may rather be viewed in the light of a contract of sale, by an absolute and original owner, in which he had agreed, upon the happening of certain contingencies, to wit, the payment of certain sums of money, to convey the vessel to his son ; and, at the same time, had given up to his son the sole control of it, together with the right to appropriate its earnings to his own use. This was done doubtless, with a view to enable him to realize funds, with which to make payments in pursuance of the contract of sale.

This however does not vary the case, upon principle, from that of a mortgagee out of possession, while the mortgagor retains the sole control. This position is fully sustained by the case before cited in 15 Johnson, 298. Indeed it is but carrying out the principle, that the hirer of a chattel cannot, without special authority for the purpose, create a liability of the owner for the costs of repairs or supplies furnished by direction of the hirer, to aid him in deriving advantage from the thing hired. As well might the landlord at a public inn claim to charge the owner of a horse, hired by a traveller, and there, by him put up to be fed, for his keeping.

It no where appears in the report of the evidence, that the defendant was conusant of the furnishing of the supplies, or ever assented to it, or promised to pay for them. Whatever may have been the expectations of the plaintiffs, the defendant cannot be rendered liable without consent on his part, either by himself personally, or by his lawfully authorized agent. No such consent appearing in the case it is the opinion of the Court, that the verdict must be set aside, and a nonsuit entered.