# Collier and Wife *v.* Falk.

*Bill in Equity for Injunction of Judgment at Law.*

1. *Injunction of judgment at law.*—To authorize the injunction of a judgment at law, it is not sufficient that the judgment is erroneous, unjust, or contrary to equity and good conscience: the party complaining must show, not only that he had and has a good defense, but that he was prevented from making it available at law, by surprise, accident, mistake, or the fraud or act of his adversary, without any fault or negligence on his own part.

2. *Same; appearance by attorney.*—An appearance by attorney, not shown

by a proper entry to be limited or special, must be taken as a general appearance ; and the authority of the attorney to appear being admitted, the defendant can not obtain equitable relief against the judgment, on the ground that the appearance was only for the purpose of obtaining a continuance of the cause : in such case, the record is conclusive.

3. *Same ; verbal agreement for continuance.*—A verbal agreement between the parties or their attorneys, for the continuance of a pending cause, being forbidden by the rules of practice (Rule No. 14, Code, 160), can not be made the foundation of equitable relief against a judgment rendered in violation of its terms.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 27th July, 1878, by William T. Collier and his wife, Margaret F. Collier, against Lewis M. Falk ; and sought to enjoin the collection of a judgment which the defendant had obtained against the complainants, in the Circuit Court of said county, on the 26th April, 1876, and to set aside the award on which said judgment was founded. Copies of the proceedings in the action at law, and of the submission and award, were made exhibits to the bill. The action at law was commenced on the 20th August, 1875 ; was founded on a promissory note for $1,177.34, executed by said Collier, dated the 28th February, 1873, and payable one day after date, to said L. M. Falk; and sought a personal judgment against said Collier, and a judgment of condemnation against certain lands, particularly described in the complaint, and alleged to belong to Mrs. Collier as her statutory separate estate, on the ground that the note was given for the price of goods sold and delivered, which were necessary family supplies. Another action between the same parties was commenced on the same day, founded on an open account for goods sold and delivered ; and on the same day on which judgment was rendered for the plaintiff in the former suit, for the amount ascertained by the award, as hereinafter stated, judgment was also rendered for the plaintiff in this second suit, for costs, with a *remittitur* of the debt or damages. At the return term, as the judgment entry recites, in the action on the note, the parties came by attorney, and the cause was continued by consent ; and at the next ensuing term, on the 36th April, 1876, a judgment was rendered as follows : " Came the parties, by their attorneys, and the defendants now say nothing further in bar of plaintiff's action; but the amount of damages being unknown to the court, came also a jury," &c., " who, upon their oaths, do say, ' We, the jury, find the issue in favor of the plaintiff, and assess the plaintiff's debt and interest at the sum of $1,020.38, with interest from the 19th February, 1876 ; and we find the following separate estate of the said married woman, Mrs. M. F. Collier,"

[Collier and Wife v. Falk.]

specifying the lands described in the complaint; followed by a personal judgment against said W. T. Collier, in usual form, and a judgment of condemnation against the lands. This is the judgment which the bill sought to enjoin.

The agreement to submit the matters in controversy to arbitration, as shown by the exhibit, is dated the 18th February, 1876, entitled as of the case then pending in the Circuit Court, and in these words: "Know all men by these presents, that whereas a certain controversy is pending between the parties to the above entitled cause, and whereas they desire to leave the determination thereof to E. M. Sams, John W. Price, and James Ratliff, as arbitrators," [they] "do hereby nominate and appoint the aforesaid Sams, John W. Price, and James Ratliff, as arbitrators, for the purpose of determining and settling all matters in dispute between them, and especially all questions of account and indebtedness, involved in and arising out of two suits now pending in said court, and between the parties hereto. In testimony whereof," &c. The award, dated the 19th February, 1876, and signed by all the arbitrators, is as follows: "We, the arbitrators in the settlement between L. M. Falk, W. T. Collier, and M. F. Collier, upon a thorough examination and investigation of the accounts and the evidence introduced before us, find the indebtedness of W. T. Collier and M. F. Collier to L. M. Falk to be one thousand and twenty dollars and thirty-eight cents ($1,020.38), principal, and interest up to date; and we do hereby render a judgment in favor of L. M. Falk, for the above amount."

· The material statements of the bill, showing the grounds on which relief was sought against the judgment and award, are substantially as follows: "Complainants allege that they do not owe said debt, and that the said land of said Margaret F. was not liable for the payment thereof, as hereafter more particularly stated. Complainants employed counsel to represent them at the Fall term of said Circuit Court, 1875, in said causes, for the purpose of securing a continuance until the next term of the court, and for that purpose alone, with a view to getting time to employ counsel to represent them on the trial, and preparing for their defense." At said term, said suits were continued by consent, as shown by the judgment entry; "and thereafter the said counsel, so employed by complainants to represent them in procuring said continuances, ceased to have any further connection with said suits, as their attorneys or counsel." After the adjournment of the court at that term, "said Falk proposed to complainants to submit the matters of dispute involved in said suits to the arbitrament of three disinterested persons, one to be selected

(15)

by each of the parties, and the third to be chosen by the two so selected. Complainants agreed to this proposition, provided said Falk would agree to withdraw his said two suits in said Circuit Court, and pay the costs that had accrued therein; and said Falk agreed to this proviso," and the agreement of submission was thereupon made. "Neither of the parties was represented by counsel on said arbitration. The arbitrators would not permit either of the parties, or any one else, to be present in the room in which said arbitration was held, either during the trial, or during their deliberations, except that said Falk and W. T. Collier were permitted to be present during their examination as witnesses. Said award is grossly unjust to complainants, in this, that justly, and according to law and right, they do not owe said Falk the amount for which he obtained said judgment of said arbitrators, nor any part thereof; and said judgment of said arbitrators was procured by the fraudulent conduct of said J. W. Price, as one of said arbitrators, and of said Falk, and by said Falk's false swearing; which complainants can establish to the satisfaction of the court, by the testimony in part of disinterested witnesses, who were not examined before said arbitrators, and whose testimony complainants have discovered since the said arbitration." "Complainants were inveigled into the said submission to arbitration by said Falk, through the instrumentality and chicanery of said Price," who, it was alleged, was then in the employment of said Falk as collecting agent, and was paid by Falk $50 for his services in connection with the arbitration; "and they were thus deprived of a fair and impartial trial of said matters of dispute. Complainants were ignorant of the fact that said Price was in the employment of Falk, and was acting secretly in his interest; and they were induced by Price to enter into the submission by his assurance, after an examination of their papers, that they did not owe anything to Falk; "and they allege that said award and judgment of said arbitrators against them is grossly unjust—that they did not owe said Falk said amount, or any part thereof; and they charge that said award and judgment against them was accomplished by the fraudulent combination between said Price and said Falk." "Complainants agreed to the proposition of said Falk" [for a submission to arbitration], "as communicated to them in a note from said Price, upon the condition that said Falk would withdraw said suits and pay the costs; which conditions were thereafter agreed to by said Falk." Said arbitrators never pretended to determine what portion, if any, of the said amount so ascertained by their award to be due to said Falk, was a charge upon the lands of the said Margaret F.; nor to

[Collier and Wife v. Falk.]

determine what portion of the amount, if any, was for articles of comfort and support of the complainants' household, and whether or not said lands were legally chargeable with the payment thereof, although this was one of the questions presented for their consideration, and the sole question so far as said Margaret was concerned"; and it was alleged that a portion of the account, " several hundred dollars," was in fact not a charge against Mrs. Collier's property. " Complainants further allege, that said papers, said submission and award, were never filed in said Circuit Court, as by law required; and that said Falk never withdrew said· suits, or paid the costs thereof, as he agreed to do, as a condition precedent to complainants' entering into said submission; and that said Falk, without their knowledge or consent, and when he must have known they were acting upon the assurance, made to them by him, that he would withdraw said suits, and without any notice or intimation to them to the contrary, took judgments against complainants in both of said suits, the same. as if said arbitration had never taken place, for the amount of said award in one case, with interest thereon." " Complainants allege that, for the reasons above stated, said judgments were obtained by surprise, accident and mistake, without the fault of complainants, and in fraud of their rights; and complainants never knew or heard of said judgments having been rendered, until after the expiration of more than four months from the date thereof, and the adjournment of the term at which they were rendered." No execution was issued on the judgments until June 24th, 1878.

The chancellor dismissed the bill on demurrer, and on motion to dismiss, for want of equity; and his decree is now assigned as error.

HUMES & GORDON, for appellants.—The bill in this case was filed, principally, on the authority of *Chambers v. Crook*, 42 Ala. 171, to which the attention of the court is particularly invited. Fraud vitiates every thing, and no recitation of fact in a record, where a judgment is obtained by fraud, is conclusive as against the defrauded party.—Story's Equity, § 887; Adams' Equity, 196, mar.; *Marine Insurance Co. v. Hodgson*, 7 Cranch, 332; *Lee v. Baird*, 4 H. & M. 453; *Wierich v. DeZoya*, 2 Gilm. Ill. 385; *Powers v. Butler*, 3 Green's Ch. 465; *Emerson v. Udall*, 13 Vermont, 477; *Rust v. Ware*, 6 Grat. 50; *Humphrey v. Leggett*, 9 How. U. S. 297; *Hahn v. Hart*, 12 B. Mon. 426; *Deaver v. Erwin*, 7 Ired. Eq. 250; *Nelson v. Rockwell*, 14 Ill. 375; *Burton v. Wiley*, 26 Vermont, 430; *Connoway v. Ellison*, 14 Ark. 360; *Trevor v. McKay*, 15 Geo. 550; *Moore v. Gamble*, 1 Stock. N. J. 246; *Sumner v. Marey*, 3 Wood. &

[Collier and Wife v. Falk.]

M. 105 ; *McJilton v. Love,* 13 Ill. 486 ; *Pearce v. Olney,* 20 Conn. 544 ; *Dobson v. Pearce,* 12 N. Y. 156 ; *Starbuck v. Murray,* 5 Wendell, 148.   But, whether the judgment was regularly obtained or not, a court of equity has jurisdiction to set it aside, and should set it aside under the facts alleged, which show that it would be inequitable and unconscientious to enforce its collection.—2 Story's Equity, § 194 ; *Carrington v. Holabird,* 17 Conn. 537 ; *Floyd v. Jane,* 6 John. Ch. 479 ; *Gainsborough v. Giffard,* 2 P. W. 424 ; *Dilly v. Heckrotte,* 8 Gill & J. 170.   That the allegations of fraud are sufficiently definite and specific, see Story's Eq. Pl. §§ 28, 265 *a,* and note 4 ; *Chicot v. Lequesne,* 2 Vesey, 318 ; *Clarke v. Periam,* 2 Atk. 337.

C. C. HARRIS, *contra,* cited *Otis v. Dargan,* 53 Ala. 178 ; *Stein v. Burden,* 30 Ala. 270 ; *Duckworth v. Duckworth,* 35 Ala. 70 ; *White v. Ryan & Martin,* 31 Ala. 400 ; *French v. Garner,* 7 Porter, 549.

SOMERVILLE, J.—The principles upon which courts of equity will intervene, for the purpose of restraining the execution of a judgment at law, are now settled without a contrariety of opinion.   It is not sufficient for the successful invocation of this jurisdiction, that the judgment or former decision was erroneous, or unjust, or contrary to equity and good conscience.   However good or meritorious may be the defense, a party defendant is not excused for a negligent failure to present it by plea, demurrer, or otherwise, in a court of law.   Courts of equity uniformly decline to interfere, unless upon the condition precedent, that it must plainly appear that the party seeking relief was prevented from presenting such defense in the court of law, because of surprise, accident or mistake, or the fraud, or act of his adversary, *unmixed with fraud* or *negligence on his part.*   If the loss of his defense is attributable to his own omission, neglect, or default, this fact is fatal to any redress sought at the hands of a court of chancery, the portals of whose relief are closed against those coming without diligence as well as clean hands.— *Waring v. Lewis,* 53 Ala. 616, 624 ; *Duckworth v. Duckworth,* 35 Ala. 70 ; Freeman on Judgments, § 486 ; 3 Wait's Actions & Defenses, 204, § 10.

The equity of the bill, in this case, is based upon the alleged fraud of the plaintiff in obtaining the judgment, and of surprise or accident in its rendition, contrary to an agreement of the parties that the cause should be continued.   There was an agreement in writing, that the matters in controversy should be submitted to arbitration ; which was done, in sub-

[Collier and Wife v. Falk.]

stantial conformity to the statute, and an award rendered thereon. Fraud and partiality are also expressly charged against one of the arbitrators. It is averred in the bill, also, that the condition upon which the arbitration was agreed on was, that the case then pending in the Circuit Court, in which the judgment sought to be enjoined here was rendered, should be continued. This agreement was not in writing, being only verbal.

Conceding that the appearance of the defendant by attorney was, as claimed, for the purpose of obtaining a continuance, this fact does not appear from the record. It is not shown by a proper entry to have been limited, or to be *pro hac vice* merely. It is, therefore, to be taken as a general appearance, and not a special one. The authority of the attorney to *appear* is admitted; and such being the case, the client is chargeable with his negligence, if he neglects to specially limit such appearance, or to obtain the consent of court to entirely withdraw it. It would be a dangerous policy, to permit the introduction of parol testimony to impeach records, by qualifying or limiting an attorney's authority under such circumstances.—*Grigg v. Gilmer*, 54 Ala. 425; Freeman on Judg. § 128. And even where an attorney appears without any authority whatever, and the record of a court of general jurisdiction recites facts showing jurisdiction of the parties and subject-matter, it may be seriously questioned whether the record does not import such absolute verity, as to preclude extrinsic evidence contradicting such recitals, in cases of *domestic* judgments.—Freeman on Judgments, §§ 131-134; 4 Wait's Act. & Def. p. 195, § 12; *Abbott v. Dutton* (44 Vt. 546), 8 Amer. Rep. 394; *Hunt v. Ellison*, 32 Ala. 173. Though the rule is held to be otherwise, in the case of *foreign* judgments rendered in the courts of a sister State.—*Kingsbury v. Yniestra*, 59 Ala. 320.

The 14th Rule of Practice in the Circuit Court, and other inferior courts of common-law jurisdiction, provides, that "no private agreement or consent between the parties, or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be *in writing*, and *signed* by the party to be bound thereby."—Code of 1876, p. 160. The alleged agreement here is in violation of this rule of practice. It is not in writing, as required. It can not be alleged or suggested, by either against the other, as a basis of redress in any court. This principle was expressly decided in *Warren, Norman et al. v. Burns*, at the present term, where this court held, that such a verbal agreement could not be looked to, or considered in evidence, as the basis of relief on a bill filed to restrain the

execution of a judgment obtained in a court of law. There, as here, there was a verbal agreement to continue the cause pending in the court of law; and this agreement was violated by the plaintiff taking judgment by *nil dicit*, without the knowledge or consent of the defendant. We are satisfied with the conclusion reached in that case; and this view proves fatal to the equity of appellants' bill, which was properly dismissed by the chancellor. His decree is, therefore, affirmed.