# Finnegan *v.* Frank.

### *Action on Charter Party.*

1. *Charter party—stipulations in, not inconsistent.*—When a charter party stipulates that the "party of the second part assumes all liability for all ordinary wear and tear of said steamer," and by a subsequent clause, "agrees to return at the expiration of the charter the steamboat in the same condition as when received, ordinary wear and tear excepted," there is no inconsistency in the two stipulations, the latter providing for injuries outside of ordinary wear and tear, for which the former provides.

2. *Same; when charterer becomes quasi owner under.*—When the charterer has absolute control of the vessel, its voyages, manning and direction, during the continuance of the charter, he becomes the *quasi* owner of the vessel, is entitled to all the benefits of ownership, and subject to all its liabilities, including those incurred for necessary repairs.

3. *Sworn plea; when necessary.*—In an action for work and labor done at the instance of the defendent, if the complaint alleges that the claim is now due and is the property of the plaintiff, and the defendant does not by a sworn plea deny the plantiff's ownership, no question as to it can be raised in this court.

APPEAL from the Circuit Court of Mobile.

Tried before Hon. H. T. TOULMIN.

Black, who was the owner of the steamboat "Peerless," chartered her to Finnegan. The material clauses of the charter party are quoted in the opinion. During the continuance of the charter, on a trip up the Alabama river, the boat encountered a violent storm of wind and rain which, despite

the efforts of her officers and crew, drove her ashore so that she struck a rock near, or the wharf at, Bell's Landing, and was thereby damaged. By order of defendant Finnegan she was hauled out on the ways and repaired. The work was done by Seawell, who claimed a lien on the boat for the cost of the repairs, which amounted to two hundred and ninety-five dollars. In order to procure the release of the steamer, Black gave Seawell the two hundred and ninety-five dollars, and took the latter's due-bill therefor, with an agreement that if a recovery was had against Finnegan, the money recovered was to be paid to Seawell, and the money given him was to be returned; but if no recovery was had against Finnegan, Seawell was to retain the money given him by Black, and the due-bill returned to Black, or destroyed. The bill for the repairs had not been paid or receipted, except as above stated. This action was brought by appellee Frank, and the complaint contained the common counts, for money paid, laid out, and expended by Black, for defendant Finnegan, at his request; for money loaned, and on an account. It also, contained three special counts, framed on the charter party, averring the injury to the boat; that it was repaired at the request of Finnegan; that Black could not obtain possession of it until he paid Seawell for the repairs that he had put on it; that Black obtained possession of the boat in this way, and assigned his claim against Finnegan to the plaintiff. The court charged the jury: "That by the terms of the charter, the defendant assumed all liability for wear and tear, and would be liable for any damage done to the boat during the continuance of the charter."

The defendant excepted to this charge of the court, and requested the following charges:

"1. If the jury believe, from the evidence, that Black chartered the steamboat "Peerless" to defendant, and that said boat had competent officers and crew aboard of her, and while being used to transport freight and passengers on the river, she was damaged by a blow or storm, without any fault or negligence of the officers or crew of said boat, that then the plaintiff cannot recover for any damage done to said boat because of said blow or storm.

"2. That if the jury should believe, from the evidence, that the steamboat "Peerless" was chartered to defendant, and during the time she was chartered there were competent officers and crew on board of said boat, and whilst said boat was in the ordinary use for which she was chartered, and while being so used the boat, by an inevitable accident, was damaged, without any fault or neglect of the officers or crew, or

[Finnegan v. Frank.]

either of them, on board said boat at the time, that then they should find for the defendant.

"3. That by the terms of the charter, the charterer was to return the boat in the same condition as when she was received by the defendant, " ordinary wear and tear" excepted. That under the charter party, the charterer is not liable as an insurer against the perils of the river, risks of navigation. If the jury should believe from the evidence that said boat had on board competent officers and crew at the time she was damaged, and at that time the said boat was in the ordinary use for which she was chartered, and while being so used she was damaged by the blowing wind or storm, without any fault or neglect of the officers or crew of said boat, that then they should find for the defendant.

"4. If the jury should believe, from the evidence, that said boat was chartered by Andy Black to defendant, and while so chartered she had competent officers and crew on board said boat, and while said boat was in the ordinary use for which she was chartered, she was damaged by an inevitable accident, over which the officers and crew had no control, and without any fault or neglect of the said officers and crew, or either of them, that then the plaintiff cannot recover."

These charges the court refused to give, and the defendant excepted.

There was a verdict and judgment for the plaintiff. The refusal of the charges is assigned as error.

BOYLES, FAITH & CLOUD, for appellant.—1. The evidence shows that the money due for repairing the boat had not been paid at the time of suit brought. Hence, there was no evidence to support the verdict, and the judgment should be reversed.—32 Texas, 606 ; 6 Nev. 175 ; 31 Iowa, 477 ; 23 La. An. 501.

2. The fourth and fifth clauses of the charter party contain inconsistent provisions, but when construed together it is the manifest intention to except ordinary wear and tear. There was no ordinary wear and tear, but the boat was damaged by an inevitable accident. In such a case, it is the duty of the owner to keep the boat in good repair.—2 Parsons Mar. Law, 599 ; 6 Mass. 63 ; 3 Johns. 44.

3. The charterer did not become the insurer of the boat, and for the injury resulting from an inevitable accident or act of God, he cannot be made liable.—3 Stew. & Port. 135 ; Ames v. Belden, 17 Barb. 513 ; 1 Benedict, 440.

4. As to the other rulings of the court, see 1 Woods C. C. 273 ; 11 La. An. 624.

[Finnegan v. Frank.]

W. D. McKINSTRY, for appellee.—1. It is the duty of the court to construe written instruments.—31 Ala. 108; 3 Ala. 237; 19 Ala. 605; 23 Ala. 652; 26 Ala. 371; 27 Ala. 259; 18 Ala. 720; 32 Ala. 569; 36 Ala. 496. The court correctly construed the charter so as to make appellant liable for any damage to the boat during its continuance.—22 Ala. 382; Chitty on Con. 14; Chitty on Pl. 524; 6 T. R. 650; *Ib.* 750; 10 East. 530; Peters' C. C. 86; 4 E. & Bl. 963; 7 E. & Bl. 763; 26 Me. 361. Plowden, 284.

2. The court correctly refused to give the charges asked by appellant for he could not excuse himself on the ground that the injury to the boat was the result of an inevitable accident. When a party by his own contract creates a duty or charge upon himself he is bound to make it good notwithstanding any accident by inevitable necessity.—4 Port. 170; 2 Parsons on Con. (6 ed. note h.) 672; 22 Ala. 382, and cases *supra.*

STONE, J.—The cause of action declared on in this case is a claim for work and labor done, at the request of defendant, appellant here. It is brought in the name of Frank, and the concluding sentence of the complaint is in the following language: "Which said sum of money, with the interest, is now due, and is the property of the plaintiff." This count fully sets forth all the constituents of an implied contract to pay money; for it avers that the defendant caused the repairs to be put on the boat. It fully complies with the statute, which authorizes such action to be "prosecuted in the name of the party really interested, whether he has the legal title or not."—Code of 1876, section 2890. If the averments of the complaint are proved, Finnegan is liable for the repairs, as for work and labor done at his request; and, as he interposed no sworn plea denying Frank's ownership of the claim, and right to sue upon it, that question was not raised in the court below, and no question can be raised upon it here. Rule 29 of Practice in the Circuit Court. See form 8, of Complaints—Code, page 702. The bill of exceptions purports to set out all the evidence, and it shows the repairs were done at the instance of Finnegan. Under these principles, the plaintiff was clearly entitled to recover, without any reference to the terms of the charter party.

It is contended for appellant, that paragraphs 4 and 5 of the charter party are somewhat incompatible, and that the latter must be construed as explaining, qualifying and dominating the former. Properly construed, we think there is no incompatibility between them. Paragraph 4 contains a provision that is somewhat uncommon. Its language is,

" that the party of the second part—(Finnegan)—shall assume all liability for * * all and every wear and tear of said steamer Peerless ; and should the party of the first part, and party of the second part disagree as to such wear and tear, then it shall be left to arbitration, and such arbitration shall be binding on the respective parties to this charter." This is a clear obligation on the part of the charterer to make good the wear and tear of the steamer during his possession of it. The 5th paragraph is as follows : "The party of the second part agree to return to the party of the first part, at the expiration of the charter, the steamboat Peerless in the same condition as when received, ordinary wear and tear excepted, as set forth in the preceding section four." Now, the rule for construing written instruments is, to give operation and effect to every clause, if it can be done. We do not presume parties intend to insert contradictory clauses in their written contracts. We industriously search for some interpretation which will reconcile them. Paragraph 4, with distinct particularity, declares that the charterer shall make good, by compensation, the wear and tear of the steamboat. He could not replace that which would be lost or suffered by wear and tear. That was a physical impossibility. He could and would compensate for it, however, by paying to the owner a sum equal to the deterioration the boat would necessarily sustain in the use. This he bound himself to do, in paragraph 4. Paragraph 5 relates to the return of the boat, at the expiration of the bailment or charter. It could not be returned free from wear and tear, the necessary consequence of use. It could be returned "in the same condition as when received, ordinary wear and tear excepted." Repairs, if needed could restore it to that condition. Paragraph 4 provided for making good the losses incident to ordinary wear and tear. That injury was inevitable. But there might be other injury. Paragraph 5 made provision for it ; but inasmuch as paragraph 4 had already provided compensation for losses caused by ordinary wear and tear, it was neither necessary nor proper that a second provision should be inserted to meet them. Hence, the 5th paragraph, after providing for the return of the boat in the same condition as when received, excluded the question of wear and tear from its operation, and left it controlled by paragraph 4 alone. "In the same condition as when received, ordinary wear and tear excepted, as set forth in the preceding section 4," is its language.

Charter parties, like most other contracts, are made to assume very varying forms. Sometimes the owner parts only with his interest in the freights, retaining the command

[American Union Telegraph Co. v. Western Union Telegraph Co.]

and control of the vessel. A class of such contracts may be found, in which only partial dominion and direction of the ship or boat is parted with. In yet another class, the bailment is complete, and the charterer, during the continuance of the contract, has absolute control of the vessel, its voyages, manning and direction. Parties, as a rule, can make their own contracts, can make them more or less binding; and when no rule of law or public policy is contravened, courts have no discretion but to enforce their contracts as they make them. In the class last-above stated, the charterer, for the time, is clothed with all the rights, and subject to all the duties and liabilities which attach to ownership. — Abbott on Ship. marg. page 57, and note; *Keene v. Davis,* 1 Adolph & Ellis, 312; *Pontchartrain R. R. Co., v. Heirne,* 2 La. Annual, 129; *Cutler v. Thurlo,* 20 Me. 213; *McCarter v. Huntinton,* 15 Johns. 298; *Perry v. Osborne,* 5 Pick. 421.

Under the contract of charter in evidence in this case, Finnegan, during his term, became the *quasi* owner of the steamboat, entitled to all the benefits of ownership, and subject to all its liabilities, including those incurred for necessary repairs.— 2 Wait's Actions, 157; *Steele v. Burk,* 14 Amer. Rep. 60.

Under the principles above declared, none of the rulings of the Circuit Court did the appellant any injury.

Affirmed.