[Hendley v. Chabert, et al.]

# Hendley *v.* Chabert, *et al.*

## *Bill to Enjoin Judgment at Law.*

(Decided June 11, 1914.   65 South. 993.)

1. *Judgment; Equitable Relief; Nature of Remedy.*—The rule permitting parties to apply to chancery for relief against a judgment in another court, is strict and inflexible, and to invoke the interference of equity it is not sufficient that wrong has been done, but it must manifestly appear that it occurred because of accident, surprise or fraud of the other party, and without fault or neglect on the part of complainant.

2. *Same; Application to Law Court.*—The exercise of due diligence as a condition precedent to equitable relief against a law judgment requires that application be made to the lower court for relief before adjournment of the term at which the judgment was rendered, and not showing such application or any excuse for failure to do so, a complainant is not entitled to relief.

3. *Same; Existence of Other Remedies.*—The jurisdiction of equity to relieve from a judgment obtained by surprise, mistake or fraud, is not ousted by section 5392, Code 1907.

4. *Same; Final Judgment; Statute.*—Under the Practice Act of Walker county, sections 1 and 6, Local Acts 1907, p. 492, the judgment by default for unliquidated damages rendered October 22, 1912, was not a final judgment, but the final judgment was that of November 21, entered after writ of inquiry and where defendant therein did not make application to the lower court for relief within 30 days from the entry of the final judgment he could not maintain a bill for equitable relief; the fact that defendant's counsel not having heard of the default judgment until the evening of the 30th day after its entry, believed that application to the law court would be too late, and hence, did not so apply, was no excuse.

5. *Same; Fraud.*—Where, on being sued, defendant saw plaintiff who knew nothing about such suit, but agreed to see the attorneys, and the parties afterwards met, and plaintiff informed defendant that the suit was brought so as to insure a recovery only on the failure to recover in a suit against another for the same injury, and defendant's counsel filed a demurrer to the complaint in March, 1912, and did nothing further until judgment by default in October, 1912, no actual positive fraud or fraudulent intent practiced, entered into the very act of obtaining the judgment, and hence, no ground for relief against the judgment on the ground of fraud is shown.

6. *Same; Pleading.*—Under the express provision of rule 14, Circuit Court Practice, a verbal statement of plaintiff that he would dismiss his suit, followed by his refusal to sign a writing to that effect, could not be alleged in a bill by defendant in the law suit to set aside the default judgment on the ground that it had been obtained by surprise, mistake or fraud.

[Hendley v. Chabert, et al.]

7. *Same; Due Diligence.*—The facts examined as to the rendition of the judgment at law, and the filing of the bill to set it aside, and held not to show that due diligence necessary to obtain equitable relief against the judgment.

8. *Same.*—The fact that a default judgment was rendered against a defendant after his demurrer had been filed, was no ground for equitable relief therefrom, where such demurrer might have been considered as abandoned by not having been called to the attention of the court; the fact that the judgment was by default instead of nil dicit, relating to a mere matter of form.

9. *Same; Doctrine and Practice.*—The fact that an action had not been set down for trial until the month in which an interlocutory default judgment was entered, and that the published list of cases did not show the case, was no ground for equitable relief from the judgment, in the absence of a showing of diligence to ascertain the status of the case, or as to the rules or practice governing trials in the circuit court under the local law applicable to. Walker county.

10. *Same; Meritorious Defense.*—Since, as against a demurrer, the general conclusions of the pleader is not sufficient, and since the allegations of such a bill must be positive, explicit and certain, a bill for equitable relief setting up in a general manner the defenses complainant had to such action, not showing that he had and could establish a meritorious defense thereto, was insufficient.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by C. P. Chabert and others against J. M. Henley. From a decree overruling demurrers to the bill, respondent appeals. Reversed, rendered, and remanded.

The bill states the facts to be that the Gas Light, Coal & Coke Company was, on February 20, 1911, engaged in running and operating a coal mine in Walker county; that Chabert & Chamborden had general superintendence and supervision as to the method and conduct of said mining operations, and could employ men working in the mine, but that the Gas Light Company reserved the right and authority to discharge persons working in said mine for complainants; that on said date one J. M. Henley was employed by complainants in said mine, and on July 15, 1911, Henley filed suit in the circuit court of Walker county, claiming damages in the sum of $10,000, alleged to have been sus-

tained while he was working in said mine on February 20, 1911, and on February 19, 1912, said Henley filed in the circuit court a complaint against orators individually and the Chabert Coal Company, claiming damages alleged to have been sustained while working in said mine, the latter complaint being identical with the former complaint; that the service of the summons and complaint in the last case was had upon orator within two or three days after it was filed, and that said Chabert went to see Henley, and asked him why he had brought the suit, and Henley stated then and there that he had not brought suit against either of these complainants, and had not authorized any one to do so, and it was not his intention or desire to cause either of complainants to pay him anything whatever on account of damages he sustained while working in the mine of the Gas Light Coal & Coke Company, and denied positively that he had sued either of complainants. In order to convince him that he had, complainants showed him the summons and complaint. He thereupon went to see his attorney, Lacy, stating the facts to him, and also told his attorney what Henley had said to him, and that his attorney advised him it would be better to make an appearance in said cause to prevent a judgment by default, and in the meantime he could get a statement from Henley to the effect that he did not want either party sued, and wanted the case against them dismissed. Later he came to Jasper to see his attorney, and went with him to the office of the clerk, where some paper was filed for complainants within less than 30 days from his service, and then went to see Henley to get the statement from him, but Henley said he had had no opportunity to see his lawyers, but that he would do so immediately, and have them dismiss the case, but refused to sign the agreement. A little later he saw his

attorney and explained that the attorney informed him
that the reason they filed suit against complainants was
to prevent the Gas Light Company from setting up a
defense to the effect that it was not liable to Henley,
but that complainants were, and that complainants
might claim that they were independent contractors
and defeat the suit against the Gas Light Company, but
that his attorney did not expect to prosecute the suit
against complainants unless the Gas Light Company
should defeat the suit which Henley had brought against
it by showing that complainants were then liable, in-
stead of it, for Henley's injuries.   It is alleged that
some time thereafter Henley and the Gas Light Com-
pany made a compromise and settlement in full for all
damages which Henley had sustained by his injuries
while working in the mines at the time above mention-
ed; that the case aginst these complainants was never
set down for trial, and no notice was given complain-
ants or their attorneys until some time in the month of
October, when a memoranda was made on the docket
setting the case for trial December 16, 1912, but that
on October 22, 1912, a judgment by default was ren-
dered by the circuit court of Walker county without no-
tice to orators or their attorneys, and on November 21,
1912, a writ of inquiry was issued, and a judgment ren-
dered against them in the sum of $2,000.   It is further
alleged that within 30 days of the service of the writ
their attorney filed a demurrer to the complaint, but
said demurrer is not now among the papers, and cannot
now be found.   The fifth paragraph set up the defenses
defendants had to the complainant, which they were de-
prived of interposing, as they allege, because of the fraud
practiced by Henley as above set out, and because of the
accident to the clerk's office and loss of pleading.   Other
facts not necessary to be here set out are averred at
some length.

[Hendley v. Chabert, et al.]

RAY & COONER, for appellant.

ERNEST LACY and BANKHEAD & BANKHEAD, for appellee.

GARDNER, J.—By this bill the appellees (complainants in the court below) seek to enjoin the enforcement of a judgment recovered against them by the respondent in a court of law. The chancellor held the bill sufficient, overruling the demurrer, and hence this appeal.

We leave a recital of the salient features of the bill to be found in the report of the case.

The judgment recovered in the law court was by default, and the theory upon which the complainants seek relief is that such judgment was so recovered as the result of fraud, accident, or surprise unmixed with fault or neglect on the part of complainants.

"The rule allowing parties to appeal to chancery against a judgment in another court is of great strictness and inflexibility, and it is necessary that it should be so, as otherwise the jurisdiction of that court would soon supplant that of all other tribunals."—*Watts v. Gayle,* 20 Ala. 825.

"A proper and due regard for the peace and interests of society requires strictness and caution in exercising the power to disturb the decrees and judgments of other courts of competent or concurrent jurisdiction, and reopening controversies, which it is the policy of the law to quiet. * * * To successfully invoke the interposition, it is not sufficient that wrong has been done, but it must be manifest that the wrong occurred because of accident, surprise, fraud, or the act of the opposite party, and without fault or neglect on the part of the party complaining. A concurrence of injustice committed and freedom from fault and negligence, is

[Hendley v. Chabert, et al.]

an indispensable condition to the exercise of this juris-
diction."—*Waldrom v. Waldrom*, 76 Ala. 289.

Again in *Foshee v. McCreary*, 123 Ala. 493, 26 South.
309, it is said: "The rules of equity are strict in re-
quiring a party seeking relief from a judgment at law
to acquit himself of fault or neglect in respect of de-
fenses which might have been interposed to prevent the
judgment."

See, also, *Ex parte Walker*, 54 Ala. 577.

It is therefore well settled that whatever may be the
fraud, or accident, or surprise alleged, unless the com-
plainant is able to show that he himself was without
fault or neglect, then he must be denied relief.

Many of the authorities use the language, "due dili-
gence must be shown," while in *Norman v. Burns*, 67
Ala. 248, it is said that: "The highest degree of dili-
gence is exacted from him, and if it is not exhibited,
the court will not intervene.   *   *   *   A want of dili-
gence is as fatal as the want of a valid substantial de-
fense, or the absence of any fact rendering it uncon-
scientious to execute the judgment."

We may, in the instant case, however, only place em-
phasis upon the expression "due diligence," and we are
of the opinion complainant has failed to meet even this
requirement, and that the bill is fatally defective.

In the first place it is well understood that an exer-
cise of due diligence requires that application be made
to the law court for relief during the term at which
the judgment was rendered, or, if not, that the bill dis-
close a valid reason for the omission.  It was so held as
far back as the case of *French v. Garner*, 7 Port. 549,
alluded to in *Ex parte Wallace*, 60 Ala. 267, as a lead-
ing case, wherein the opinion says: "He [complainant]
does not show that he could not have applied for a new

trial to the court which tried the cause, nor show any excuse for his not doing so."

So, also, in the more recent case of *National Fertilizer Co. v. Hinson,* 103 Ala. 532, 15 South. 844, where it is said : "Again, the bill is fatally defective in failing to show why application was not made to the court, *before adjournment,* to set aside the judgment."

This is fully recognized as the rule in *Evans v. Wilhite,* 167 Ala. 591, 52 South. 845. See, also, *Blood v. Beadle,* 65 Ala. 103.

There is no averment whatever in this bill that application was made to the law court to set aside the judgment, *before adjournment* of said court, nor is there any effort made to excuse a failure to do so. Under numerous authorities of this court, this is a fatal defect in the bill. We emphasize the words "before adjournment" as it is well settled that the statutory provision for rehearing (section 5372, Code) does not oust the chancery jurisdiction in such cases as therein provided. —*Evans v. Wilhite, supra.*

From brief of counsel for appellee, however, it seems to be the insistence that the bill shows a discovery of the judgment by complainants too late for such application to be made, as 30 days had expired after judgment by default was rendered before they learned of the same, and that therefore, under the practice act which governs Walker county (Acts 1907, page 494), the judgment had passed beyond control of the court.

It is to be noted that the suit in that court was for recovery of unliquidated damages, and that the judgment by default was rendered October 22, 1912. The writ of inquiry was executed and final judgment rendered November 21, 1912, and complainants learned of this final judgment the night of November 21, 1912, which date was the 30th day from the default judgment.

Section 1 of said Act 1907, p. 492, provides for taking of judgment by default, and also provides for *setting the same aside* by the court for good cause shown. Section 6 of the act provides that *final* judgment shall be considered beyond control of the court after the expiration of 30 days from rendition thereof. Was, therefore, the judgment by default rendered October 22, 1912, in a case seeking recovery of *unliquidated* damages, a final judgment within the meaning of the said practice act? We think not.

"And generally a final judgment cannot be entered where the damages are unliquidated, or the amount of plaintiff's claim uncertain or indeterminate; there must first be an interlocutory judgment by default, and the final judgment is entered after the damages have been assessed on a writ of inquiry or otherwise determined according to law.'—23 Cyc. 765.

We offer this quotation only as an aid to the proper construction of said act. The circuit court was in session, presumptively, at least, of course, from rendition of default judgment to the entry of final judgment on execution of writ of inquiry. It is clear that as a *general rule,* the court would of course have had full control of such default judgment during such term, and the only question remaining is whether or not there is anything in said practice act which would work a change in the rule. What we here say in regard to said default judgment not being a final judgment is to be understood as construing said act, and, of course is therefore confined to the case in hand. We think it clear that the language used in said act demonstrates that the default judgment in a case of this character was not a *final* judgment as referred to in section 6 of said act, but was interlocutory and still remained within the control of the court, and that the 30 days' limitation there-

in mentioned did not apply thereto. The default judgment in this case of October 22, 1912, was therefore only an *interlocutory* judgment, and the *final* judgment was rendered after the writ of inquiry was executed and amount of recovery thereby fixed, which was on November 21, 1912. Therefore the *final* judgment was of this latter date, and it was this judgment to which the language of section 6 of the act above must apply.

As to whether or not an appeal would lie from an order overruling the motion to set aside the judgment (it being a default judgment), as contended by counsel under the authority of *Haygood v. Tait,* 126 Ala. 264, 27 South. 842, is immaterial. There was no necessity of anticipating an adverse ruling, but the *duty* was upon complainants to have made the application.

If counsel did not so construe the act, and rested upon a mistaken idea as to the law, it furnishes no excuse. This was directly decided in case of *Norwood v. L. & N. R. R. Co.,* 149 Ala. 151, 42 South. 683, a reference to the opinion therein found being sufficient without further comment. The bill, therefore, does not show application made to the law court before adjournment or before expiration of required time, nor any excuse for not doing so, and is fatally defective in this respect.

When fraud is relied upon to relieve against a judgment, it must be fraud practiced in the very act of obtaining the judgment, "fraud in its concoction"; and, as held in *Hardeman v. Donaghey,* 170 Ala. 367, 54 South. 172: "The nature of fraud, too, must be such as is utterly repugnant to honest intentions. It must, in a sense, be shown to be actual and positive."

We find no averment of the bill which would indicate fraudulent intent, within the meaning of the authorities, on the part of the respondent. The bill shows that upon suit being brought and service had in February,

1912, one of the complainants went to see the respond-
ent concerning same, and it shows that in point of fact
the respondent himself did not know of *that particular*
suit, but stated he would see his attorney.  It is alleged
he made a verbal statement that he would have the suit
dismissed.  The complainant then went to his attorney
and informed him of the situation and of the declara-
tion of respondent, and the attorney thereupon wrote
out a statement for the signature of respondent, who
*refused* to sign, stating he would see his attorneys.  That
thereafter the parties again met, and respondent told
the complainant as to why the suit was brought against
them as explained to him by his attorney.  Counsel for
complainants had filed a demurrer to the complaint.
All this occurred during the latter part of February,
1912, and the first part of the month of March, 1912.

The bill shows nothing more done by complainants
during all the time intervening between such date and
October 22, 1912, when the judgment by default was
taken.  As previously stated, no actual, positive fraud,
nor fraudulent intent and design is alleged, but on the
contrary what was said and done by the respondent is
consistent with honest intentions.  The theory of the
bill must therefore seem to rest upon the *verbal* state-
ment of respondent that he would dismiss the case. But
it is shown that respondent *refused* to sign the state-
ment in writing to that effect.  The verbal statement
as to dismissal was invalid and unenforceable under
the fourteenth rule of practice in the circuit court
(Code 1907, p. 1520), which reads: "No private agree-
ment or consent between the parties or their attorneys,
relating to the proceedings in any cause, shall be alleg-
ed or suggested by either against the other, unless the
same be in writing, and signed by the party to be bound
thereby."

In *Collier v. Falk,* 66 Ala. 223, a case very much in point, after quoting above rule, it is said: "The alleged agreement here is in violation of this rule of practice. It is not in writing, as required. It cannot be alleged or suggested, by either against the other, as a basis of redress in any court."

Speaking to the same effect, and referring to agreement of the attorney that judgment would not be taken, the court, through Chief Justice BRICKELL, in case of *Norman v. Burns,* 67 Ala. 21, says that: "Abstaining from causing them to be reduced to writing, and signed, was an abstinence from the measure of diligence the law imposed upon him, and it is far better that he should suffer damage from his own want of diligence, or his misplaced confidence, than that a precedent should be made lessening the dignity of judgments, and protracting strife and controversy."

The bill in the instant case shows the respondent *declined* to sign such statement, and clearly under the above authorities, and under these circumstances, complainant cannot rely for relief upon such verbal statement.

But, even with this aside, the subsequent conversation with respondent disclosed to complainants that he was relying upon his attorneys as to the suit and the reason why the suit was brought, and the bill shows that complainants themselves employed counsel, and fails to show that any further attention was given to the suit after filing the demurrer in February, 1912, until the filing of this bill in December, 1913.

We think it clear that complainants have not shown an exercise of that "due diligence" required in cases of this character.—*Collier v. Parish,* 147 Ala. 526, 41 South. 772.

[Hendley v. Chabert, et al.]

Nor is it any ground for relief that the judgment was by default, demurrer having been filed. Not having been called to the attention of the court, the demurrer could have been considered as abandoned, and the fact that the judgment was by default instead of nil dicit relates to a mere matter of form.—*Elyton Land Co. v. Morgan & Co.,* 88 Ala. 434, 7 South. 249.

Nor is it sufficient ground for relief that the cause was not set down for trial until in the month of October, and the list of cases made out by the clerk and published did not disclose the case of respondent against complainants. No diligence or effort on part of complainants to ascertain the status of the cause is shown.—*Renfro Bros. v. Merryman & Co.,* 71 Ala. 195. Nor does the bill give information as to rules of practice governing trial of causes in said court under authority of sectins 11 and 12 of said practice act.

But in any event, these were matters, of course, which were proper to be first presented to the law court upon seasonable application, which, as previously stated, should have been made to that court, or else a valid excuse for failing to do so should appear in the bill.

In addition to the requirements of a bill of this character as herein stated, it is 'also required that the bill show that complainants have a good and meritorious defense to the cause of action, which they can establish.— *National Fertilizer Co. v. Hinson, supra,* fourth headnote; *Ex parte Wallace,* 60 Ala. 267. "In a bill of this character to obtain an injunction against a judgment at law, the allegations must be positive, explicit, and certain.  *  *  *  As against a demurrer, the general conclusion of the pleader is insufficient."—*De Soto Coal & Mining Co. v. Hill,* 188 Ala. 667, 65 South. 988; 23 Cyc. 1039.

We do not think it can be said that the bill in this respect meets these requirements, as the defenses are stated in rather a general manner.

As previously stated herein, the final judgment was rendered November 21, 1912, and this bill appears to have been filed December 23, 1913, more than a year thereafter. This delay is unexplained, but it is unnecessary that we express any opinion as to this, as the bill is fatally defective in other respects as herein shown, yet we think it proper to exercise the same caution as did the writer of the opinion in the case of *National Fertilizer Co. v. Hinson, supra,* 103 Ala. 536, 15 South. 844, and to state we do not commit ourselves to the proposition that *unexplained* delay of 13 months after rendition of the judgment is not fatal to relief in equity, if the case were otherwise made out. We express no opinion thereon. Several essential elements of a bill of this character are here lacking. The bill, in our opinion, is fatally defective, and as framed is without equity.

The decree of the chancery court is reversed, and one here rendered sustaining the demurrer to the bill and allowing complainants 30 days within which to amend the bill as they may be advised, if so desired, and the cause is remanded to said chancery court.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFILD and SOMERVILLE, JJ., concur.