87 So.2d 32

**Charles R. LUCY et ux.**

v.

**Mary HALL et al.**

**7 Div. 301.**

Supreme Court of Alabama.

April 12, 1956.

Scott, Dawson & Scott, Fort Payne, for appellants.

Leonard Crawford and C. A. Wolfes, Fort Payne, for appellees.

GOODWYN, Justice.

The appellants, Charles R. Lucy and Marie Lucy, husband and wife, filed in the circuit court of DeKalb County, in equity, a bill of complaint against Mary Hall, Lena Hall, Ruth Hall Laws, and G. H. Noles, as sheriff of DeKalb County, seeking the following relief: (1) A decree setting aside and annulling a judgment nil dicit rendered by the circuit court of DeKalb County against Charles R. Lucy in favor of the respondents, except the sheriff; and (2) a decree enjoining and restraining the sheriff from selling or attempting to sell, in satisfaction of said judgment, Mary Lucy's interest in lands jointly owned by her and Charles R. Lucy. The appeal here is from a decree sustaining appellees' demurrer to the bill.

In substance, the bill alleges the following: That the complainants, Charles R. Lucy and Marie Lucy, are husband and wife and reside in the State of Virginia; that they own jointly a farm at Portersville, Alabama [DeKalb County], on which they resided on June 18, 1952, when a suit, leading to the judgment here involved, was brought against complainant Charles R. Lucy by respondents Mary Hall, Lena Hall and Ruth Hall Laws; that service of said suit was had on Charles R. Lucy on July 7, 1952; that thereafter complainants moved from DeKalb County to Virginia, but that they still own said land; that before leaving DeKalb County, Charles R. Lucy "employed the firm of Hawkins and Meadows of Fort Payne, Alabama to represent them and protect their interest in said suit and that said suit remained on the docket and as an active cause in said Court until February 8, 1954 when the record shows that an attempted judgment nil dicit was rendered against the said Charles R. Lucy in the Circuit Court of DeKalb County, Alabama and that following the entry of said judgment and during the month of September, 1954, execution was secured from said judgment and was by the Sheriff levied upon the joint lands of the Complainants and advertisement has run in the paper to the effect that the Sheriff, the said G. H. Noles, will on the 1st day of November, 1954, sell said lands [described in the bill] for the satisfaction of said judgment as the property of the Complainant, Charles R. Lucy"; that said judgment was rendered against Charles R. Lucy "through mistake and without any negligence on his part and that he has a good and perfect defense to said suit which he was prevented from making in said Court at the time said judgment was rendered by mistake and inadvertence and without any fault or negligence on his part"; that Charles R. Lucy "received notice from his attorneys sometime before the case was due to be heard during the February term of the Circuit Court in 1954 and that he wrote his attorneys at letter telling them of the sickness that was in his home and that it never occurred to him that it was necessary to get a doctor's certificate to that effect but he thought all that was necessary was for him to notify his attorneys"; that "his people were sick, that his daughter had the flu and that his wife was sick with a cold or the flu and

that he should not have left them to come to Court"; that "notwithstanding the fact that his people were sick, he did attempt to come to Court and when about half way from Blackstone, Virginia to Fort Payne, his truck broke down and that when he got it repaired so that he could travel, it was too late for him to reach Court by the day the case was set and he was anxious not to remain away from his folks any longer than was necessary and that he returned home"; that "he received no notice from his attorneys that a judgment had been rendered against him and that the first information he ever had that a judgment had been rendered against him was when he received a letter from the Sheriff of DeKalb County telling him that he had levied on his land and that said notice was received soon after September 22, 1954"; that Charles R. Lucy has a defense to the action and "in his judgment a complete defense to it for this reason: He had nothing to do with the fire which spread from his land to the land of the Respondents, Hall, for which said action was brought; that the party who put it out was not his agent or servant nor any person over whom he had control, a fact well known to the Halls; that he was in no way responsible for the origin of said fire nor was he under any duty to protect the Plaintiffs in that suit against said fire, but notwithstanding that fact, on said occasion he did call the forest ranger and aided in putting out said fire".

■ The demurrer assigns sixteen grounds. The decree sustaining the demurrer does not specify the ground or grounds thought by the trial court to be good. In this situation the decree will be referred to such grounds as will support it. American Life Ins. Co. v. Powell, 260 Ala. 574, 576, 71 So.2d 872. McDonald v. Pearson, 114 Ala. 630, 21 So. 534. If one of the grounds is well taken the decree sustaining the demurrer is correct and must be here affirmed. American Life Ins. Co. v. Powell, supra; Cook v. Cook, 248 Ala. 206, 208, 27 So.2d 255.

One insistence of appellees, as pointed out by their demurrer, is that the bill does not show that complainant Charles R. Lucy "was without fault in the rendition of said judgment against him".

■ It is firmly established, and not open to question, that equity has jurisdiction to set aside, and to enjoin the enforcement of, a judgment at law procured through fraud, accident, surprise, or mistake, when the complaining party has a meritorious defense to the action and *was himself without fault or negligence in permitting the rendition of the judgment.* Carson v. Rains, 237 Ala. 534, 535, 187 So. 707; Timmerman v. Martin, 234 Ala. 622, 624, 176 So. 198; Leath v. Lister, 233 Ala. 595, 596, 597, 173 So. 59; Hanover Fire Ins. Co. v. Street, 228 Ala. 677, 681, 154 So. 816; Damon v. Gaston, Williams & Wigmore, 213 Ala. 164, 165, 166, 104 So. 512; Alabama Chemical Co. v. Hall, 212 Ala. 8, 9, 10, 101 So. 456; Kirkland v. C. D. Franke & Co., 207 Ala. 377, 378, 92 So. 472; Nation v. Nation, 206 Ala. 397, 398, 90 So. 494; Edmondson v. Jones, 204 Ala. 133, 135, 85 So. 799; Barton v. Burton Mfg. Co., 202 Ala. 180, 182, 79 So. 664; McAdams v. Windham, 191 Ala. 287, 290, 68 So. 51; Hendley v. Chabert, 189 Ala. 258, 262–264, 65 So. 993. However, "'A proper and due regard for the peace and interests of society requires strictness and caution in exercising the power to disturb the decrees and judgments of other courts of competent or concurrent jurisdiction, and re-opening controversies, which it is the policy of the law to quiet. * * * To successfully invoke the interposition, it is not sufficient that wrong has been done, but it must be manifest that the wrong occurred because of accident, surprise, fraud, or the act of the opposite party, and without fault or neglect on the part of the party complaining.'" Hanover Fire Ins. Co. v. Street, supra [228 Ala. 677, 154 So. 819]; Waldrom v. Waldrom, 76 Ala. 285, 289.

■■ It is our view that the bill does not meet the requirements of the stated rule authorizing the interposition of equity and that the demurrer to the bill was properly sustained. For the purposes of this appeal we need only discuss whether the

bill shows that Charles R. Lucy was without fault or negligence in permitting the judgment to be rendered against him.

This is not a case of a defendant having no notice of the suit against him. Instead, the defendant was not only served with process but had employed counsel to defend him and had made an appearance in the suit. Apparently, the theory of the bill is that he did not know that the judgment nil dicit had been rendered against him and that such fact was sufficient to exonerate him of any fault in permitting its rendition or in seeking relief therefrom in the law court where the judgment was rendered. While the bill avers that he did not know of the rendition of the judgment until notified by the sheriff of the levy on the land, it affirmatively appears from the bill that he knew the case was set for trial on February 8, 1954, the date the judgment was rendered. As stated in Black on Judgments, 2nd Ed., Vol. 1, § 387, p. 614: "A litigant is required to exercise the greatest degree of watchfulness over the progress of his case in court." It is our view that even though he was unable to be present when the judgment was rendered due to the breakdown of his truck or because of sickness in his family, such circumstances alone would not be sufficient to excuse him from fault so as to authorize equity to give him relief from the judgment. What was said in Hendley v. Chabert, supra [189 Ala. 258, 65 So. 995], seems of special significance here, viz.:

"* * * [W]hatever may be the fraud, or accident, or surprise alleged, unless the complainant is able to show that he himself was without fault or neglect, then he must be denied relief.

"Many of the authorities use the language, 'due diligence must be shown,' while in Norman v. Burns, 67 Ala. 248, it is said that: 'The highest degree of diligence is exacted from him, and if it is not exhibited, the court will not intervene. * * * A want of diligence is as fatal as the want of a valid substantial defense, or the absence of any fact rendering it unconscientious to execute the judgment.'

* * * * * *

"In the first place it is well understood that an exercise of due diligence requires that application be made to the law court for relief during the term at which the judgment was rendered, or, if not, that the bill disclose a valid reason for the omission. It was so held as far back as the case of French v. Garner, 7 Port. 549, alluded to in Ex parte Wallace, 60 Ala. 267, as a leading case, wherein the opinion says: 'He (complainant) does not show that he could not have applied for a new trial to the court which tried the cause, nor show any excuse for his not doing so.'

"So, also, in the more recent case of National Fertilizer Co. v. Hinson, 103 Ala. 532, 15 So. 844, where it is said: 'Again, the bill is fatally defective in failing to show why application was not made to the court, *before adjournment*, to set aside the judgment.'

"This is fully recognized as the rule in Evans v. Wilhite, 167 Ala. [587] 591, 52 So. 845. See, also, Blood v. Beadle, 65 Ala. 103.

"There is no averment whatever in this bill that application was made to the law court to set aside the judgment, *before adjournment* of said court, nor is there any effort made to excuse a failure to do so. Under numerous authorities of this court, this is a fatal defect in the bill. We emphasize the words 'before adjournment' as it is well settled that the statutory provision for rehearing (section 5372, Code) [Code 1940, Tit. 7, § 279] does not oust the chancery jurisdiction in such cases as therein provided. Evans v. Wilhite, supra."

From Barton v. Burton Mfg. Co., supra [202 Ala. 180, 79 So. 666], is the following:

" * * * [T]he circumstances relied on to excuse failure to defend at law, or to apply to such court for relief, must have been such that no exercise of diligence on complainant's part could have guarded against the result from which relief is sought in equity. * * *"

The decree sustaining the demurrer to the bill is due to be affirmed. So ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.