# Williams v. Tyler.

### Statutory Rehearing.

(Decided January 11, 1916.   Rehearing denied February 1, 1916.
71 South. 51.)

Judgment; Default; Setting Aside.—Where the custom had long prevailed, and was universal, for the clerks of each of the courts in Jefferson county to issue a printed docket containing the names of the cases set for trial in said court, with the names of the attorneys, and during all of such time it has been the custom of the bar to rely upon such printed docket for the notice of the setting of such cases, and not to examine the dockets in the clerk's office, and the name of the defendant and her attorneys were properly entered upon the appearance docket of the city court, but in making a transcribed docket of the cases set for trial, the clerk omitted defendant's first name, by accident or mistake, and omitted the names of defendant's attorney, and the same omission appeared in the printed docket made up and distributed among the attorneys, and as a result defendant's attorney did not discover that defendant's case was set for trial, and a judgment was rendered against her nil dicit, such attorney was entitled to rely, and warranted in relying, on the printed docket furnished by the clerk, and the judgment rendered was by mistake or accident, and without fault on the part of defendant within the provisions of § 5372, Code 1907.

(Thomas, J., dissents.)

APPEAL from Birmingham City Court.

Heard before Hon. JOHN C. PUGH.

Petition by Myrtle S. Wililams for new trial in the case of W. G. Tyler v. Myrtle S. Williams, in which judgment was rendered nil dicit, for plaintiff and against petitioner. From an order sustaining demurrer to petition, petitioner appeals. Reversed and remanded on rehearing.

The following is the amended petition:

Comes the petitioner, Myrtle S. Williams, who is the defendant in the above-styled cause, No. 32544, and respectfully represents unto the court that she was prevented from making her defense in the above-styled cause No. 32544 by surprise, accident, or mistake, without fault on her part, and that a judgment was rendered against her in the above-styled cause No. 32544 in the said city court of Birmingham, for the sum of $920.50, within four months from this date, to-wit, on the 7th day of January, 1915. Petitioner further represents unto this court and states that within 30 days after the service of the summons and com-

[Williams v. Tyler.]

plaint upon her in the above-styled cause No. 32544 she employed the law firm of Harsh & Fitts to represent her in the above-styled cause, and to represent her defense in this court in said cause; that within said 30 days the said attorneys representing defendant therein, who is this petitioner, filed in said cause on behalf of said defendant, now petitioner, demurrers to said complaint, and upon the same paper in which said demurrer was filed demanded a jury in writing for the trial of said cause; that in the summons and complaint filed against her in said cause No. 32544 this petitioner, defendant therein, was designated as "Myrtle S. Williams," and she was so designated in said proceedings filed in said cause by her said attorneys; that at all times from the service of said summons and complaint to the present time this petitioner has lived in Jefferson county, Alabama, and her said attorneys during the whole of said time have had an office in Birmingham, Alabama, and the said attorneys had or knew petitioner's post office address and her whereabouts. And petitioner avers that neither she nor her said attorneys ever knew or had any notice whatsoever that the said cause was set for trial until the day that the said original petition was filed, to-wit, the 8th day of March, 1915; that she learned that said cause had been set for trial accidentally, and by learning that a judgment had been rendered against her while she was engaged in or about selling or trading a piece of her real estate; and that her said attorneys did not know and had no notice of the said judgment, or that the said cause No. 32544 was set for trial, until their attention was called to the same by this petitioner on said 8th day of March, 1915. Petitioner further avers that Jefferson county is a very large and populous county, containing, as petitioner is informed and believes, upward of 250,000 population, and that the city of Birmingham, in said county, in which this court is held, is a large city, containing upwards of 175,000 population; that the said city court of Birmingham has four judges, each of whom hold court separately one from the other, and are in session from the first Monday in October to the last day in June, less some short legal vacations; that the dockets of said city court of Birmingham contain a vast number of cases, as petitioner is informed and believes, and therefore states, more than 2,000 cases; that there is held contemporaneously with said city court of Birmingham other courts in the said city of Birmingham, viz., the circuit court of Jefferson county, which has

two judges, each of whom holds court separately from the other; the chancery court, which has one chancellor, the criminal court of Jefferson county, which has two judges, each of which holds court separately from the other, and the United States District Court, which has one judge; that the said circuit court has a great number of cases on its docket, much in excess of 1,000; that the said criminal court has several thousand cases on its dockets, to-wit, 3,000 cases, and that the said chancery court has a large number of cases on its docket, and that the said United States court has a considerable number of cases on its docket, that petitioner's said attorneys are attorneys engaged in the general practice of law in the said city of Birmingham, and practice in each of said courts in common with most of the bar in Birmingham; that long before the filing of the above-styled cause against this petitioner it had been recognized by the bar of said city of Birmingham and by the officers of said courts that it was practically necessary that the clerks of each of said courts should issue a printed docket for distribution amongst attorneys having causes set in said courts in advance of the day on which said causes were set, for the purpose of thereby receiving notice of the day on which said causes were set for trial; that for a long time prior to the filing of said cause, and at the time thereof, and ever since, the custom has universally prevailed in Jefferson county, Alabama, for the clerks of each of said courts to issue such a printed docket containing the names of each of the cases set in said court, together with the names of the attorneys for the plaintiff and also the names of the attorneys for defendant printed therein in connection with such causes, and to issue said docket a long enough time ahead of the day on which said causes were set for trial that the attorneys might have notice therefrom in ample time of the setting of the causes to notify their clients and to prepare same for trial on the day for which said causes were respectively set for trial, and during all of said time it has been the custom of the bar in said Birmingham to rely upon said printed dockets for notice of the setting of said causes, and it has been the custom of petitioner's said attorneys to so rely upon said printed docket; that if attorneys were required to go to the clerk's office and there examine the original trial dockets, or original appearance dockets, or to procure the clerk to do so, in order to ascertain when their causes were set for trial, it would result in great expense and loss of time to said attorneys

and to the clerks of said courts, and would require extra help to be furnished by said clerk, in order to furnish the opportunity for said attorneys to so examine said dockets, and would require extra help by and on behalf of attorneys who had in said courts any considerable practice; that an examination would have to be made frequently of the dockets of said courts, and that attorneys in making said examination would have to have lists of the causes in which they represented either plaintiff or defendant in said courts; that for several years last past the clerks of each of said courts have always furnished said printed docket to the attorneys, and it has not been the custom during said time for attorneys to examine the dockets in the clerk's office to ascertain when causes were set for trial, but, on the contrary, it has been the custom during the whole of said time to rely on said printed docket to so ascertain.

Plaintiff avers that the system of requiring attorneys to examine the original dockets in the office of the clerks would be wasteful of time and money, very vexatious and annoying, and wasteful to the clerks, and would be wholly impracticable; that Birmingham is a metropolitan city and that a metropolitan practice does not practically admit of any such method; that the above-styled cause No. 32544 was docketed on one of the large dockets of the city court of Birmingham, to-wit, the appearance docket, and on said original docket the defendant's name was given correctly and in full, and her said demurrers signed by her said attorneys were shown on said docket to have been filed, and the names of her said attorneys were there entered on said appearance docket, to-wit, in the month of June, 1914, at or about the time petitioner's said demurrers were filed in said cause; that the clerk of said court, through himself or one of his deputies, undertook to transcribe from said original or appearance docket the causes thereon to be set for trial during the term of said court beginning on the first Monday in October, 1914, including the above-styled cause No. 32544, and that said transcribed docket was the docket to be used and which was used in setting said causes so transcribed, including the above-styled cause, for trial during said term; that in transcribing the above-styled cause the said clerk or his deputy by accident or mistake omitted the first name of defendant, and merely gave initials, and omitted the names of defendant's attorneys and all reference thereto; that the said cause was marked on said transcribed

[Williams v. Tyler.]

docket as set for trial January 5, 1915, and a printed docket as
above described was made up and printed at the instance of said
clerk for distribution amongst attorneys having causes set on
said docket, that they might learn in due time the dates on which
their said causes were set for trial; that by accident or mistake
there was not only omitted from said transcribed docket the first
name of defendant, only her initials being given, and also the
names of her attorneys and all reference thereto, but there was
also omitted from both of said dockets, to-wit, said transcribed
docket and said printed docket, the names of defendant's attor-
neys and all reference thereto; that in the due course of business,
and in the diligent prosecution of their practice, said attorneys
procured one of said printed dockets in due season, in order that
they might learn from same, in accordance with the practically
universal custom at said Birmingham, the date on which each of
the causes was set for trial on said docket in which they repre-
sented plaintiff or defendant, and they procured one of said
dockets long before the said 5th day of January, 1915, to-wit, in
the month of December, 1914; neither the names of defendant's
attorneys nor her first name were on the docket in the clerk's
office on which said cause was set for trial, and said
names did not appear on any docket in the clerk's office, except
the original or appearance docket, and the time set for trial was
not indicated on that docket; that said printed docket contained
the names of more than 1,000 cases, and covered a period of from
the first Monday in January to, and including the 1st day of
April, 1915; that of the total number of cases on said printed
docket petitioner's said attorneys represented for 150; that it
was the universal custom of the clerk, in causing said printed
docket to be printed wherever the defense had been filed by an
attorney, to print the attorney's name as the attorney for de-
fendant, and whenever the cause had been filed by attorney the
printed docket showed said attorney's name as attorney for
plaintiff; that where no defense had been filed to print a blank
line, instead of the name of any attorney; that the said attorneys
were aware that they had filed defenses in all their causes which
could be printed on said printed docket, and had signed their
names to the papers in which said defenses were filed, and that
they had done so; that there were a considerable number of
cases printed on said docket in which no names were printed as
attorneys for defendant in said causes, there being no defenses

filed in said causes at said time, except in said cause against peti-
tioner No. 32544, in which cause defense had been filed, and
which defense was signed by defendant's said attorneys.

Petitioner further avers that there are a great number of per-
sons named "Williams" in Jefferson county, Alabama, and in the
city directory of the city of Birmingham in use at said time alone
there are shown the names of a great number of persons named
"Williams," to-wit, 957, and it contains the names of 68 persons
named "Williams" whose first name begins with an "M," as does
petitioner's; that the said attorneys in person or by competent
agent examined said printed docket carefully, and by reason of
the names of said attorneys being omitted from said docket, and
all reference to said attorneys being omitted therefrom, and by
reason of defendant's first name being omitted therefrom, said
attorneys, without fault on their part or on the part of their said
agent, failed to ascertain from said docket, or otherwise, that
said cause was set for trial until more than 30 days after the said
judgment was rendered against this petitioner, and only ascer-
tained same as above set out, to-wit, on the 8th day of March,
1915, and then by accident. Petitioner further avers that it was
solely by reason of and as a proximate consequence of the said
accident or mistake of the clerk or his deputy, without fault on
her part, and without fault on the part of her said attorneys, that
she was prevented from making her defense in the above-styled
cause No. 32544, and that said judgment was rendered against
her. She further avers that the whole of the claim of plaintiff
in the above-styled cause No. 32544 against defendant was based
upon the claim of plaintiff that he as a real estate agent had sold
for and on account of this petitioner a certain lot in the city of
Birmingham, Alabama; and this petitioner states that the said
plaintiff, W. G. Tyler, did not sell said lot, but, on the contrary,
said lot was sold by another real estate agent or concern, to-wit,
Tarrant Realty Company, who have been fully paid and satis-
fied for their services in so making said sale; and petition further
avers that she did not, at the time of the bringing of the suit in
the above-styled cause No. 32544, or at any time thereafter, owe
plaintiff anything for or on account of said sale, or for or on ac-
count of any cause whatsoever, and that she has a full and com-
plete defense to the said cause of action, and that she was pre-
vented from making her said defense by surprise, accident, or
mistake, as above set out.

[Williams v. Tyler.]

Premises considered, this petitioner prays that the said judgment rendered against her in the above cause be set aside, and that she have a rehearing in said cause, and for other, further, and general relief.

HARSH & FITTS, for appellant. JOHN T. GLOVER, for appellee.

THOMAS, J.—This is an appeal from the final judgment of the lower court refusing to grant a statutory rehearing applied for under section 5372 of the Code, known as the "four months statute," and is the proper remedy for reviewing such action of the lower court.—*End. Dep. Dis. G. L., etc., v. Harvey,* 6 Ala. App. 245, 60 South. 602, and cases cited. The reporter will set out the petition, as amended, for rehearing, that was so denied. The court sustained a demurrer to it, which presents as the only point for review the question as to whether or not the facts alleged in the amended petition are sufficient, if true, to show either "surprise, accident, mistake, or fraud, *without fault*" on the part of petitioner or her counsel, within the meaning of those terms as employed in said section 5372 of the Code.—*Traub v. Fabian,* 160 Ala. 210, 49 South. 240; *Wheeler v. Morgan,* 51 Ala. 573; *Walker's Case,* 54 Ala. 577; *North's Case,* 49 Ala. 385; *Brock's Case,* 65 Ala. 79; *Blood's Case,* 65 Ala. 103.

We cannot, it seems to us, with due regard for the decision of our Supreme Court, which are binding on us, hold otherwise than that the trial court did not err in sustaining the demurrers to the petition, as amended, and in denying the rehearing. It is no doubt true, as is contended, that the averments of the petition clearly show that the failure to make defense against the judgment prayed to be set aside was due to the mistake or oversight of the clerk of the court in stating, in the printed dockets of the cases pending in the court that were distributed as pamphlets among the bar for their information, the case of W. G. Tyler against the petitioner, Myrtle S. Williams, in a different style or way from that in which it was stated on the regular dockets of the court; and it is no doubt further true that this difference in the statement of the case led petitioner's attorneys, as it naturally would under the circumstances as disclosed in the petition, to overlook the fact that the case stated and styled on the printed docket or pamphlet as "W. G. Tyler v. M. S. Williams," and which failed to show the appearance of any counsel for defendant, was the same case as was stated and styled on the regular

court dockets as "W. G. Tyler v. Myrtle S. Williams," and which showed that counsel had entered an appearance for defendant; but it is further true that, notwithstanding this, the defendant's counsel, with whose negligence defendant is chargeable, cannot escape—if we adhere, as we must, to the rulings of our Supreme Court—the charge of a lack of due diligence, which diligence, though it may not have required that the petitioner's counsel discover from the printed docket itself that the two cases were one and the same, did require that, when they failed to discover on the printed docket the case against their client, which they knew was pending in that court to be tried, they make some inquiry of the clerk to ascertain the status of that case and why it had been omitted from the printed docket, which inquiry would have led to the information that it had not been omitted, but was on such docket, and was set for trial on the day there named.

It may be that where the clerk, as in this case, for his own convenience and that of the bar, prepares and furnishes printed lists of the cases pending for trial, together with a statement of the day they are, respectively, set for trial, counsel interested would have a right to rely on the information there imparted as to the date set for trial, the same as he would have a right to rely on information imparted in a letter from the clerk written by him in answer to a request from counsel for information as to when a particular case was set for trial, and that, if a case appearing on such list was taken up and tried on any day previous to the day it was there stated as set for trial, and this without a change of notice to counsel, who, relying in good faith on the first notice, was not present at the trial, then this would probably furnish good ground for rehearing (*Renfro v. Merryman,* 71 Ala. 195; *Womack v. Bookman,* 34 Ala. 38), although the clerk may have made a mistake in the first instance by having given the wrong, instead of the correct, date that the case was set for trial, and although the case may have been tried on the correct date that had, at the time of the giving of the wrong date, been actually set for the trial. A party, we think, should not in this character of proceeding be charged with fault for having relied in good faith on information as to the date a case is set for trial, although such information is incorrect, if it is imparted by the clerk, since he is the officer known to be the maker and custodian of the records which contain that information, and since, therefore, it is naturally to be supposed that he would give only cor-

[Williams v. Tyler.]

rect information. But where the clerk imparts no information at all, the case is different; since, though a party may rely on information from the clerk, he is not allowed to rely on a *lack of information* from him with respect to a matter concerning which it is the party's duty to inquire.

The recent case of *Henley v. Chabert,* 189 Ala. 258, 65 South. 993, decided by our Supreme Court, settles this proposition. In that case the bill alleged, as one of the grounds upon which the rehearing was prayed: "That the said case of Henley against these orators [which as previously averred was pending in the circuit court of Walker county, and in which complainants had, as here, seasonably filed a demurrer to the complaint] was never set down for trial  *   *   *   until some time in the month of October, 1912," etc.; "that on the 22d day of October, 1912, without notice to orators, or either of them, or their attorneys, a judgment by default was rendered by the circuit court of Walker county, of which neither of these orators or their attorneys had any notice; that on, to-wit, the 21st day of November, 1912, a writ of inquiry was issued in the case, without any notice to either of these orators or their attorneys, and judgment rendered against orators in the sum of $2,000; and that prior to that time a list of the cases in the circuit court of Walker county, which were set for different days between November 11, 1912, and January 23, 1913, was published and furnished the several attorneys living in Jasper [where complainants' counsel lived], and practicing in said court, and that nowhere in said published list or pamphlet in said cause did it state or show that said case of Henley against these orators was set for trial," etc.

This ground of the bill for rehearing our Supreme Court disposed of very briefly by saying: "Nor is it sufficient ground for relief that the cause was not set down for trial until in the month of October, and the list of cases made out by the clerk and published did not disclose the case of respondent against the complainants. No diligence or effort on the part of complainants to ascertain the status of the cause is shown."—*Henley v. Chabert, supra,* 65 South. 993.

The court cited in support of this holding the case of *Renfro v. Merryman,* 71 Ala. 195, where it was held that the claimant in a case of the trial of the right of property was not without fault, and hence was not entitled to a rehearing where it appeared that he attended court on Wednesday and Thursday of the

[Williams v. Tyler.]

first week of the term at which the case was triable, ready with his testimony and attorney to try the case, but, finding that the case had not been docketed, he and his attorney left court, when afterwards, to-wit, on Saturday of that week, the case was for the first time docketed, and was tried immediately after being so docketed and without notice to claimant or his counsel. In disposing of the question, Judge Brickell, speaking for the court, said: "Waiving all other considerations, it is manifest the appellants were wanting in reasonable diligence. * * * Reasonable diligence required them to be active in the prosecution of the claim. The inadvertence of the clerk in omitting to enter the suit on the docket it was their duty to cure by directing his attention to the omission. That omission did not work a discontinuance of the suit; and it was the duty of the clerk, when he discovered it, to rectify it by docketing the cause. When docketed, it was within the discretion of the court to call the cause for trial at any time during the term, a particular day not having been set for trial."—*Renfro v. Merryman, supra.*

The case as made by the instant petition, where from the allegations of the petition it appears that, on the printed docket or pamphlet furnished by the clerk to petitioner's counsel, the cause pending for trial against her as defendant was not stated or described with that fullness and particularity that it was stated or described on the regular dockets of the court, and that as a result of this difference in the statement or description of the cause petitioner's counsel were misled, and overlooked the fact that it was one and the same cause, is certainly no stronger than the case of *Henley v. Chabert, supra,* where, as seen, it appeared that on the printed docket or pamphlet, furnished counsel the cause pending in the court against petitioner as defendant was not stated or described at all, but was omitted entirely therefrom. The fact that the cause that was pending for trial against petitioner here as defendant was so meagerly described in the printed list of pending causes that was furnished petitioner's counsel as not to call such counsel's attention to the fact that it was the same cause as that in which they had been previously employed to represent petitioner and wherein they had already filed a demurrer, surely puts petitioner in no better position or standing for a rehearing than if a statement or description of said cause had been left off or omitted entirely from said list.

[Williams v. Tyler.]

On account of the difference in description between the case against petitioner as stated or styled on the printed docket and the same case as stated or styled on the regular court docket, it may be that counsel should be excused, as urged by them, from not discovering the identity of the cases from an inspection of the printed list itself; but when we so excuse them upon this theory, upon which they insist, it amounts to a holding that the case was so meagerly and differently described in the printed list from what it was on the regular docket as to be equivalent, so far as the printed list conveyed any information to counsel with respect to the matter, to having been left off entirely from the printed list. Therefore, in the final analysis of the case at bar, we are presented exactly with the same proposition as confronted our Supreme Court in the case of *Henley v. Chabert, supra;* consequently, for us to hold here that the appellant was entitled to a rehearing would be to overrule the decision of our Supreme Court in the latter case, unless that case can be differentiated from this, as counsel insist it can, by reason of the fact of the large difference between the number of causes and the volume of business pending in the court where that case originated (the Walker county circuit court) and the number of causes and volume of business pending in the court where this case originated (the city court of Birmingham).

But we cannot see that these facts should make any difference in the application of the principle here involved. Attorneys, whether rural or urban, whether enjoying a large or small practice, whether employed in many or only a few cases, and whether those cases are pending in a court with heavy or light dockets, are supposed to know and keep in mind, by memory if they be few, and by memorandum if they be many, the cases in which they have been employed; and when a clerk furnishes an attorney with a printed list of the cases pending in a particular court in which that attorney practices, then, although it is customary for the clerk to furnish such list, and although ordinarily it is reliable, it is the duty of the attorney to look over the list and see if the cases in which he is employed are listed, and, if not listed, to make inquiry of the clerk as to their status, because the attorney, upon not finding on such list a case in which he has been employed and which he knows is pending for trial, must naturally infer that there has been an oversight in some way on the part of the clerk in omitting it.

[Williams v. Tyler.]

The fact that an attorney has so many cases that he cannot keep them actually in mind does not relieve the duty of meeting this requirement; for under such circumstances he can keep a written memorandum or private list of his cases, from which list he can as conveniently check the list furnished him by the clerk as he could from memory where his cases are few, which checking, if properly done, will in all cases lead to a discovery of the omission of any of his cases from the list furnished by the clerk. If omitted, then it is a case where the clerk has furnished no information at all, and it is therefore incumbent on the attorney to inquire. This, it seems to us, is the rationale of the decision of our Supreme Court in the two cases to which we have last adverted.—*Henley v. Chabert* and *Renfro v. Merryman.* No inquiry as to the status of the cause having been made in the present case, so far as appears from the allegations of the petition, a case of due diligence is not shown, and the lower court, consequently, did not err in sustaining the demurrers to the petition and in denying the application for rehearing.—Authorities supra; *National Co. v. Hinson,* 103 Ala. 532, 15 South. 844; 4 Mayf. Dig. 715, 312.

The principles governing the granting of rehearings under the statute (Code, § 5372) here invoked are the same as those obtaining had relief been sought by bill in equity, since the object of the statute was merely to provide a less expensive and more speedy remedy than the latter and as cumulative of it.—*Renfro v. Merryman, supra; Evans v. Wilhite,* 167 Ala. 587, 52 South. 845; *Todd v. Leslie,* 171 Ala. 625, 55 South. 174. As a statement of these principles, and in fortification of our application of them to the case at bar, it is not inappropriate to here quote briefly from the decisions of our Supreme Court, which we do as follows: " 'A proper and due regard for the peace and interests of society requires strictness and caution in exercising the power to disturb the decrees and judgments of other courts of competent or concurrent jurisdiction, and reopening controversies, which it is the policy of the law to quiet.   *   *   *   To successfully invoke the interposition, it is not sufficient that wrong has been done, but it must be manifest that the wrong occurred because of accident, surprise or fraud, or the act of the opposite party, and without fault or neglect on the part of the party complaining. A concurrence of injustice committed and freedom from fault and negligence is an indispensable condition to the exercise

[Williams v. Tyler.]

of this jurisdiction.'—*Waldrom v. Waldrop*, 76 Ala. 289.   *   *   *
'The rules of equity are strict in requiring a party seeking relief
from a judgment at law to acquit himself of fault or neglect in
respect of defenses which might have been interposed to prevent
the judgment.'   *   *   *—*Foshee v. McCreary*, 123 Ala. 493 [26
South. 309].   *   *   *   The highest degree of diligence [though
other authorities use the term "due diligence"] is exacted from
him, and, if it is not exhibited, the court will not intervene.—
*Norman v. Burns,* 67 Ala. 248."—*Henley v. Chabert, supra.*

Affirmed.

### ON REHEARING.

THOMAS, J.—On application for rehearing, it is said in ap-
pellant's brief:

"This court, bowing to what it conceives to be the authority
of the Supreme Court in the case of *Henley v. Chabert,* concludes
that this case presents no stronger appeal for relief than that
case, and holds that if a lawyer, upon the perusal of a printed
docket setting out a number of cases, fails to find a particular
case of his upon that particular docket, he must conclude that
something wrong had happened, because the case necessarily
should have been on that docket.   *   *   *   This court surely
knows that all the cases pending upon the dockets of the city
court of Birmingham are not set at one setting—that all are not
put upon any printed docket issued for the information of liti-
gants and attorneys. A docket   *   *   *   covers only about three
months of actual court work, and it would be preposterous to
think of setting all of the causes pending in the court within that
period of time.   Therefore, in the city court of Birmingham, it
could not follow from an omission of a particular case from a
printed docket that the cause was wrongfully omitted."

We acquiesce in the correctness of the conclusion expressed,
but not in one of the premises upon which it is rested.   This
court cannot, as that conclusion assumes, take judicial knowledge
that the clerk of the city court of Birmingham does not, at the
commencement of the term of said court, or other time, and at
one setting, set for trial all cases at issue then pending on the
docket of said court, and that, consequently, the printed list fur-
nished by him to attorneys does not, and is not intended to, cover
all cases at issue pending on said docket, but that said clerk, at

[Williams v. Tyler.]

the commencement of said term and at one setting, sets for trial only such part of the cases at issue on said docket as he decides should be tried within the next three months, and that at the expiration of said three months he makes another setting, and so on until the end of the term, and furnishes to the attorneys during the term, not one printed list covering all the pending cases, but several lists—one at the commencement of the term, and others from time to time thereafter as he sets the cases, each covering only the cases set for a particular three months. If this be true, and if the particular printed list furnished counsel during the term mentioned was not the last to be furnished for that term, then we concede that counsel, when failing to find his case on that list, would have no occasion to believe that there was an accidental omission of his case from that list; nor would there, we think, arise in such case any necessity for inquiry on his part of the clerk, since, under such circumstances, counsel, it seems to us, should have a right to presume that the clerk had not set the cause at the time of furnishing that list, that he had, consequently, intentionally omitted it therefrom, and that he would subsequently set it, and let it appear on some subsequent list to be furnished during the term. While, in such a case, the particular printed list so served furnishes no information at all as to the status of the particular case, yet such case may be differentiated from that stated in the opinion, where only one list was supposed to be served during the term, and this by reason of the fact that the clerk has, by the establishment in the past of a practice and custom to furnish further lists during the term, impliedly promised in the present to do so, upon which promise counsel would, on account of such past practice and custom, have a right to rely in dealing with a particular list before them, at least to the extent of presuming that, although their cause did not appear on that list, it would appear on a subsequent list to be furnished during the term.

This presumption, however, cannot be indulged as to the last list of the series of lists to be furnished for the term; for when counsel, who know that the particular cause has not appeared on any previous list served during the term, and who know, as the petition here shows, that that cause *is at issue, undisposed of, and pending for trial at that term* on the dockets of said city court, fails to find it listed on the last of the series of printed lists to be furnished for the term—it not having appeared on

any previous list—he is under as much duty to make inquiry of the clerk as to the status of that cause as he would have been, had it been the custom and practice of the clerk to furnish only one list covering all cases at issue on the docket, as was supposed in the opinion, instead of, as is now contended for, several lists, covering together all the cases at issue on said docket. It is as much a case of no information at all when all of such several list, including the last, taken together, furnish no information, as when one list covering all the cases at issue furnishes none. The two cannot be distinguished in principle. Each falls under the authority of *Henley v. Chabert, supra,* and under the reasoning which we, in our opinion, have given as what we conceived to be the basis of that authority. If that authority is severe as to the degree of diligence exacted of counsel, this is a matter to be addressed to our higher court on certiorari, and not to us.

Furthermore, if in fact it was the practice and custom of the clerk to furnish during the term, not one printed list purporting to cover all the cases on the docket at issue for that term, as we inferred in the opinion, but to furnish, as is now claimed, several lists—one at the commencement of the term and others from time to time thereafter as he sets the cases for trial, each covering only those cases at issue on the docket as are set for a particular three months—and if the list referred to in the petition as furnished counsel was not the last of the series to be furnished for the term, these facts, which would, as seen, distinguish this case from the *Henley-Chabert Case,* should have appeared from the allegations of the petition. We cannot take judicial knowledge of them, even though they be facts, since they are not matters of common knowledge, as is insisted.—17 Am. & Eng. Ency. Law, 892.

Appellant next urges that the allegations of the petition are sufficient to show that these are the facts. In his brief on this point it is said: "The sworn petition necessarily shows it. On page 2 it avers that the dockets of the city court of Birmingham contain a vast number of cases, *'more than 2,000.'* The same petition shows that the printed docket contained *'more than 1,000 cases.'* "

But counsel overlook the fact that, while it is true that the petition does show that the dockets of said city court "contained more than 2,000 cases"—including, we must infer, those at issue and those not at issue—it fails to show how many of them were

at issue, or how many were not, thereby leaving us entirely in the dark on this subject. Only those at issue would, we infer, appear on any printed list of the cases set for trial, because only those at issue could be legally set for trial; and, for all we know, therefore, the "more than 1,000 cases" which, the petition alleges, appeared on the printed list served on counsel, constituted and compromised the whole of the cases at issue on the dockets of said city court. Consequently there is nothing in the allegations mentioned to show but what the list served on counsel covered, and was intended by the clerk to cover, all the cases at issue, as the case here was, on said docket. But even if there was anything in the petition to show that such list was only a partial list of such cases, and that it was the practice and custom of the clerk to furnish several, instead of one, during the term, there is nothing to show but what the list here was the last of the series to be furnished for the term. If it was, then the case cannot be distinguished, for reasons before pointed out, from the *Henley-Chabert Case.* Pleadings are, on demurrer, to be construed most strongly against the pleader, and must negative every reasonable adverse intendment. "If we allow the averment to be true, but at the same time a case may be supposed consistent with it which would render the averment inoperative, * * such a case will be presumed or intended, unless excluded by particular averments."—*Scharfenburg v. Decatur*, 155 Ala. 654, 47 South. 95. Another statement of the rule is that, if pleadings admit of two reasonable constructions, that least favorable to the pleader must be adopted.—4 Mayf. Dig. 447, par. 4.

We are unable, in the light of these principles, to find that the petition makes a case that can be differentiated from the *Henley-Chabert Case*, where, we repeat, it was said by our Supreme Court: "Nor is it sufficient ground for relief that * * * the list of cases made out by the clerk and published did not disclose the case of respondent versus complainants. No diligence or effort on the part of complainants to ascertain the status of the cause is shown."

In that case the printed list published by the clerk furnished, as pointed out in our opinion, no information at all as to the status of the particular cause, but, by accident or mistake of the clerk, such cause was omitted entirely from said list. In the instant case, while the printed list so furnished by the clerk does not contain information, and that correct, with respect to the

status of the particular cause, yet, on account of the accident or mistake on the part of the clerk in describing on the printed list that cause so differently from the way in which it was described on the regular court dockets, we are asked to say that counsel for petitioner should be excused for their failure to discover the identity of the cause as stated on the printed list with the cause as stated on the regular court dockets, and hence should be excused for their failure to act on the correct information imparted by said list as to the day said cause was set for trial. If we excuse them, it can only be, as stated in the original opinion, on the theory that the statement or description of the cause on the printed list was so different or variant from the statement or description of it on the regular dockets of the court as to amount to no statement or description of that cause at all on the printed list.

Hence we have the identical situation as presented in the *Henley-Chabert Case*—not a case where the clerk furnished incorrect information as to when a particular cause was set for trial, but a case where he furnished no information at all as to when such cause was set for trial; consequently a case where, as in the *Henley-Chabert Case*, counsel were under duty, if they would be "without fault," which the statute (Code 1907, § 5372) requires as a condition to relief, to make inquiry of the clerk as to the status of said cause, which would have resulted in information as to the day said cause was set for trial. The fact that in the *Henley-Chabert Case* the relief was ought by bill in equity, rather than, as here, by petition at law under the four months statute (Code 1907, § 5372), does not alter the result; since, as pointed out in the authorities cited in the original opinion, it is indispensable to relief in either case that the judgment prayed to be set aside should have been obtained, not only as the result of "surprise, accident, mistake, or fraud," but "without fault" on the part of the party seeking relief, or of his or her counsel. What is, and what is not, "without fault" in such a case, are matters on which equity and the law cannot and do not differ. Consequently, if in equity a complainant is not "without fault," but is lacking in "due diligence," who fails to make inquiry as to the status of his or her cause, which is omitted from a printed list furnished by the clerk, but which complainant or his or her counsel knows to be at issue and pending for trial at that term of the court, then equally at law a petitioner for rehearing under the

four months statute is not "without fault," but is lacking in "due diligence," who fails, under the same circumstances, to make such inquiry. The latter remedy is merely, as we pointed out in the opinion, a statutory substitute for the former, and is governed, as to the questions here involved, by the same principles.

Nor can the case at bar be differentiated from the *Henley-Chabert Case* by the fact that in the instant case it appears that it was the custom of the clerk to furnish printed lists, while it does not so appear in the *Henley-Chabert Case*. Such a custom vel non on the part of the clerk is, it seems to us, entirely immaterial to the question of "due diligence" on the part of counsel, since we are unable to see why an attorney would not have as much right to rely on a printed list furnished by the clerk for the first time and purporting to contain a statement of all the cases on the docket that have been set for trial, together with the several days on which they have been respectively so set, as he would have to rely on such a list after the clerk had established a custom of furnishing it, because, as we see it, the thing which warrants an attorney in relying on the correctness of information imparted by such a printed list so furnished by the clerk is not the fact that the clerk has established a custom of furnishing such a list, but the fact that the list emanates from the clerk— the officer of the court and the maker and custodian of its records, wherein that information so communicated by him reposes —who, as such officer, has access to that information, and is supposed, therefore, to furnish it correctly when he undertakes to do so, whether verbally, by letter, by printed lists, or otherwise. For this reason—that is, because the clerk is the officer of the court—it is our view, as expressed in the original opinion, that attorneys and litigants have a right to accept as correct, and to act upon it in appearing at court, all information actually imparted by the clerk as to when a particular cause is set for trial, however that information be imparted, whether by printed lists or otherwise, and although it be incorrect, but that whenever the clerk fails to impart any information on that subject, as was true in the *Henley-Chabert Case,* and as is true in the instant case— as so appears from the analysis we have heretofore given of this case—then it is the duty of counsel, if they would avoid being lacking in "due diligence" under the four months statute, to make inquiry and ascertain when the cause, with reference to which the clerk has furnished them no information, and which

they know to be pending and at issue for trial at that term of the court, is set for trial.—*Henley v. Chabert, supra.*

The foregoing, which is in line with what was said in the original opinion, expresses the views of the writer, which, if they had been approved by the court, would have resulted in over-ruling appellant's application for rehearing. However, the other members of the court, my Associates, Judges PELHAM and BROWN, who constitute a majority, have, since the original opinion was written, changed their views, and think, for reasons as severally expressed by them in the following opinions, that the application for rehearing should be granted. What I have said is sufficient to indicate why I am of opinion that each of them is in error in supposing that this case can be distinguished from the *Henley-Chabert Case* on either of the grounds set forth in their respective opinions. Judge PELHAM is at fault, I think, in holding, as the basis for the distinction drawn by him, that not as much diligence is required to be shown on the part of counsel when relief against a judgment is sought under the four months statute, like in the present case, as when sought by bill in chancery, like in the *Henley-Chabert Case*. On the other hand, the holding of Judge BROWN, that the two cases may be distinguished, is based upon a misconception, I think, of the very basis of fact upon which relief is sought in the present case, which misconception is clearly disclosed by the following statement in his opinion, to-wit: "Would a reasonably careful attorney, under these circumstances, have relied on the information furnished by the printed docket furnished by the clerk? We cannot escape the conclusion that he would be warranted in so doing, and that petitioner's attorney had a right to rely on the information it furnished."

As we have hereinbefore pointed out, the petition, when properly analyzed, predicates the right to the relief sought, not upon the ground that the printed list furnished any information as to the status of petitioner's cause, and that such information was incorrect, but upon the ground that said printed list furnished, in effect, no information whatever as to the status of petitioner's cause, since it described said cause in such a way as that its identity was not, even in the exercise of reasonable diligence, discoverable by petitioner's counsel. Consequently, we repeat, this is a case, like the *Henley-Chabert Case,* where the clerk imparted no information at all by the printed list as to the status

of petitioner's cause, and not a case where the clerk imparted incorrect information. In the latter case, we agree, as before said, that counsel would have a right to rely on the information imparted, though it turned out to be incorrect. My Brother BROWN goes further, and in his effort to distinguish this case from the *Henley-Chabert Case* says in effect that, in view of the well-known doctrine that "negligence is a relative term," it might well be that an attorney in Walker county would not be "without fault," as was held in the *Henley-Chabert Case,* if he neglected to make inquiry as to the status of his client's cause when failing to find it on a printed list furnished by the clerk, yet that an attorney in Jefferson county would be "without fault" in neglecting to make such inquiry under those circumstances, provided it appears that it was customary for attorneys in the latter county to so neglect, and was not so customary in the former county. We are unable to appreciate the force of this application of the doctrines of custom and relative negligence. It seems to us that, if due diligence requires of an attorney in Walker county the duty of making inquiry under the circumstances mentioned, it should, and does, required it of an attorney in Jefferson county, and that a custom not to exercise it in the latter county cannot be allowed to supplant the requirements of the law in this kind of a matter.

In pursuance of the holding of the majority of the court, the application for rehearing is granted, judgment of affirmance set aside, and a reversal ordered.

BROWN, J.—Petition for rehearing under section 5372 of the Code, providing: "When a party has been prevented from making his defense by surprise, accident, *mistake* or fraud, without fault on his part, he may, in like manner, apply for a rehearing at any time within four months from the rendition of the judgment."

The judgment against which relief is sought was rendered on the 7th day of January, 1915, and the original petition for rehearing was filed on the 13th day of March, 1915. A demurrer was sustained to the original petition and the petition as amended, and, the petitioner declining to plead further, judgment dismissing the petition was entered, and from that judgment this appeal is prosecuted.

It is well settled that the proceeding under consideration here is not a continuation of the original suit, but is an independent

[Williams v. Tyler.]

suit, analogous to a bill in equity for relief against judgments at law, and is governed by the same principles (*Evans v. Wilhite,* 167 Ala. 587, 52 South. 845), with probably more liberal application in proceedings for rehearing under the statute, where, when rehearing is granted, the entire case is opened and the cause proceeds as if no judgment had been rendered. In such case "the petitioner will not be put to full proof of the facts upon which his defense in the original action depends," and the petition is sufficient if it appears that he will be able to make full defense when the action is again tried.—*Ex parte Wallace,* 60 Ala. 268. The gravamen of the petition in this case is that, through accident or mistake of the clerk of the court, the name of the defendant was not correctly transcribed on the trial docket on which the case was set for trial, and the names of her attorneys, who had appeared for her and filed a demurrer to the complaint, were not entered therein, and on account of this mistake her attorneys did not recognize the case on the docket as that of the petitioner, or take notice of the date on which it was set for trial. The petition, after showing that petitioner has a good defense to the action, avers that when the case was regularly reached for trial, on motion of the plaintiff, the demurrer filed by her attorneys was stricken and judgment rendered against her, and that it was so ordered on account of the mistake of the clerk above stated, and that she had no notice or knowledge of the rendition of the judgment until long after the time allowed for the ordinary motion for new trial. The petition further avers: "That the clerk of said court, through himself or one of his deputies, undertook to transcribe from said original appearance docket [where the petition shows the names of the parties and the defendant's attorneys were properly entered] the causes thereon to be set for trial during the term of said court beginning on the first Monday in October, 1914, including the above-styled cause, numbered 32544, and that said transcribed docket was the docket to be used and which was used in setting said causes so transcribed, including the above-styled cause, for trial during said term; that in transcribing the above-styled cause said clerk or his deputy, by accident or mistake, *omitted the first name of defendant,* and merely gave initials, and *omitted the names of defendant's attorneys and all reference thereto;* that the said cause was marked on said transcribed docket and set for trial January 5, 1915, and a printed docket as

[Williams v. Tyler.]　·

above described was made up and printed at the instance of said clerk for distribution among attorneys having cases set on said docket, that they might learn in due time the dates on which said cases were set for trial; that by accident or mistake there was not only omitted from said transcribed docket the first name of defendant, only her initials being given, and also the names of her attorneys and all reference thereto, but there was also omitted from both of said dockets, to-wit, said transcribed docket and said printed docket, the names of defendant's attorneys and all reference thereto; that in the due course of business, and in the diligent prosecution of their practice, said attorneys procured one of said printed dockets in due season, in order that they might learn from same, in accordance with the practically universal custom at said Birmingham, the date on which each of the cases was set for trial on said docket in which they represented plaintiff or defendant; and they procured one of said dockets long before the said 5th day of January, 1915, to-wit, in the month of December, 1914. Neither the names of defendant's attorneys nor her first name were on *the only docket in the clerk's office* on which said cause was set for trial, and said names did not appear on any except the original or appearance docket, *and the time set for trial* was not indicated on that docket."

The city court of Birmingham is presided over by four judges, and the act of the Legislature approved February 26, 1907, regulating the setting of cases for trial provides: "The cases in said court shall, under the direction of said judges, be arranged on four separate dockets. Each of said judges may be separately engaged at the same time, or at different times, in the trial of different cases. One of said dockets shall be made up of chancery cases; one, of cases in which juries have not been demanded; one of appeal and certiorari cases, and cases in assumpsit, ejectment, trover and detinue, in which juries have been demanded; and one of all other cases in which juries have been demanded; but in the discretion of the judges, more than one of the judges may be engaged at the same time in the separate trial of different cases on the same docket. The judges may, in their discretion, alternate in the trial of the different dockets, either monthly or at such times as may to them seem proper. *They shall have the control and direction of the setting of all cases,* and cases shall be set for trial as nearly as practicable in the order in which they are brought."—Local Acts 1907, p. 256.

[Williams v. Tyler.]

It is the statutory duty of the clerk of the court, not only to keep a correct appearance docket of all civil cases, on which must be entered all the civil actions brought, the names of the parties, the character of the action, the name of the attorney by whom the same is brought, and the sheriff's return, but it is likewise his duty to enter the appearance of the attorney for the defendant, and to make up and keep a trial docket of all civil cases, on which must be entered the names of the parties, the character of the action, and the names of the attorneys employed and appearing in the cause.—Code 1907, § 3272; Local Acts 1907, p. 259. And it is this trial docket, necessarily, that is used by the judges in setting cases for trial, and this is the docket that litigants would naturally examine, under ordinary circumstances, for information as to the date set for trial of causes thereon. In the absence of notice or knowledge that the clerk had failed to perform his duty of correctly transcribing the names of the parties and their attorneys on the trial docket, attorneys practicing in the court have a right to assume that the clerk has performed this duty.—Jones on Evidence, § 45; *Roman, Trustee, v. Lentz, et al.*, 177 Ala. 70, 58 South. 438.

But it is not enough that the judgment was rendered and petitioner's right to make her defense cut off by the accident or mistake of the clerk in failing to correctly transcribe the names of the party and her attorneys on the trial docket; she must go further, and show that she was not guilty of negligence in respect to making her defense to the action. Otherwise stated, she must show that the judgment was rendered because of accident or mistake on the part of the clerk, unmixed with negligence on her part or the part of her attorneys, whose negligence, if found, must be charged to her.—*Evans v. Wilhite, supra; Broda v. Greenwald*, 66 Ala. 538. This is the crucial point in the case, on which its result must turn. She undertakes to acquit herself of such negligence by showing that she employed a firm of reputable lawyers in the city of Birmingham to represent her in making her defense; that within the time allowed for pleading they appeared for her and filed appropriate pleadings in the case, and their names were duly entered by the clerk on the appearance docket; that there is an enormous amount of litigation in the courts at Birmingham, and a vast number of pending causes on their dockets, averring that on the dockets of the city court alone there were "more than 2,000 cases;" that because of

these conditions it was impracticable for attorneys practicing in said courts to examine all the dockets to ascertain when the causes wherein they were interested were set for trial, and by a universal custom, long prevailing, the clerks of said courts had periodically issued printed dockets for information of the bar and litigants, containing the names of such cases as were set for trial and the date so set; that it was the universal custom of the bar to rely on this docket for such information. The petition in this respect avers: "That long before the filing of the above-styled cause against this petitioner it had been recognized by the bar of the said city of Birmingham and by the officers of each of said courts that it was practically necessary that the clerk of each of said courts should issue periodical dockets for distribution among attorneys having causes set in said courts in advance of the day on which said causes were set, for the purpose of thereby receiving notice of the day on which said causes were set for trial; that for a long time prior to the filing of said causes, and at the time thereof and ever since, the custom has *universally* prevailed in Jefferson county, Alabama, for the clerks of each of said courts to issue said printed dockets containing the name of each of the cases set in said court, together with the name of the attorney for the plaintiff and also the name of the attorney for the defendant printed therein in connection with such case, and to issue said docket a long enough time ahead of the day on which said causes were set for trial that the attorneys might have notice therefrom in ample time of the setting of said causes to notify their clients and prepare the same for trial on the days for which said causes were respectively set for trial, and during all of said time it has been *the custom of the bar of said Birmingham to rely upon said printed docket for notice of the setting of said causes,* and it has been the custom of the petitioner's said attorneys to so rely upon said printed docket; * * * and it has not been the custom during said time for attorneys to examine the dockets in the clerk's office to ascertain when causes were set for trial, but, on the contrary, to rely on said printed docket to so ascertain."

The petition then avers that the clerk issued such printed docket, and petitioner's cause was improperly entered thereon, and the names of her attorneys wholly omitted therefrom; said docket contained "more than 1,000 cases" set for trial, and after diligently examining this printed docket they did not dis-

cover that petitioner's cause was entered thereon, by reason of the said mistake of the clerk in entering the cause, and were misled thereby, and by reason thereof the judgment was entered. The question here is: Do these averments acquit the defendant and her attorneys of negligence as a matter of law? In other words, under the circumstances here disclosed, were the defendant's attorneys justified in assuming, in the absence of notice to the contrary, that this printed docket was correct, and were they justified in relying upon it?

The statute confers upon the judges of the city court of Birmingham the power to make rules of practice regulating the trial and disposition of causes in the court, and the writer entertains the opinion that the sanction by the officers of the courts of the long-established custom shown by the petition as to the manner of setting cases for trial and giving notice thereof is tantamount to establishing a rule of court to that effect, and that litigants and their attorneys were justified in looking to this printed docket for information as to the date cases were set for trial. This conclusion is induced by the fact that a great body of our law is the growth of custom and usage governing the conduct of men and fixing their rights.—12 Cyc. 1030. However this may be, the presumption as to the regularity of official acts has been gradually extended to acts unofficial, and the courts universally hold: "That it is reasonable to assume that the usual and customary modes of business have been adopted in a given case, until some departure from the regular mode has been shown."—Jones on Evidence, § 48. What might be negligence under some circumstances at some time or place may not be negligence under other circumstances at another time and place. All the surrounding attendant circumstances must be taken into account, if the question involved is one of negligence, such as the opportunity for deliberation, degree of danger, and many other considerations of like nature, affecting the standard of care which may be reasonably required in the particular case."—29 Cyc. 417, 418. That negligence is "the failure to do what an ordinarily prudent person would have done under the circumstances."—*Alabama City, Gadsden & Attalla R. R. Co. v. Bullard,* 157 Ala. 618, 47 South. 578. That "what is negligence and what is due care may depend upon the custom and habit of people in the same place and under similar circumstances. So the drivers of horses and carriages on the highways, and the masters or pilots of ships and steam-

[Williams v. Tyler.]

boats on the water, must follow the customary mode of passing each other, and a failure to comply with such custom will amount to negligence. And the presentation of a check may be shown by usage to be in time, which without such proof would be deemed to be negligently delayed. Again, where the question was whether a guest at a hotel had been guilty of negligence in leaving the key in the door of his room, in which was a large sum of money, evidence of usage of guests at the hotel leaving keys in the doors of their rooms was held to be relevant."—12 Cyc. 1079; Jones v. Pitcher, 3 Stew. & P. 135, 24 Am. Dec. 716.

In view of these well-established principles of law, and the custom shown by the petition and admitted to exist by the demurrer, the question is: Would a reasonably careful attorney, under these circumstances, have relied on the information furnished by the printed docket furnished by the clerk? We cannot escape the conclusion that he would be warranted in so doing, and that petitioner's attorney had the right to rely on the information it furnished. Furthermore, the printed docket was an exact copy of the trial docket on which the case was set, the error occurring in transcribing the case onto the trial docket; so, if the petitioner's attorneys had examined the trial docket, they would have gained no more information than appeared in the printed docket which they did examine.

The case of Henley v. Chabert, supra, 65 South. 993, is easily distinguished from the case here presented. The gravamen of the bill in that case was alleged fraud, practiced by the plaintiff in the action, in misleading the defendant by oral statements as to what disposition he intended to make of the case; yet it was shown that he refused to put the agreement in writing, thus putting the defendant on notice that he would not be absolutely bound by his statements. In that case there was no averment of a long-prevailing custom as to the issuance of a bar docket for the information of litigants and their attorneys, and their custom to rely upon such docket. The only averment in that record touching this matter was: "And that prior to that time [the rendition of the judgment] a list of the cases in the circuit court of Walker county which were set for trial on different days between November 11, 1912, and January 23, 1913, was published and furnished the several attorneys living in Jasper practicing in said circuit court, and that nowhere on said published list or pamphlet of said causes did it state or show that the said case of J. M. Henley against these orators was set for trial."

And, besides, there is a vast difference in the facts and circumstances surrounding the parties in this case to those existing in that, and, as we have shown, in treating the question of negligence, this must be taken into account.

The case of *Renfro v. Merryman*, 71 Ala. 195, is also easily distinguished. In that case the complainant and his attorney knew that the case was triable at the term of the court at which the judgment was rendered, and attended the court for the purpose of trial, and after examining the trial docket and finding the case had not been entered thereon, without calling the matter to the attention of the court, absented themselves from the court. In that case the parties had knowledge that the case stood for trial, that the clerk had failed in his duty, and, relying upon his negligence and the unwarranted assumption that he would continue his negligence, they left the court. This was a positive act of negligence, based upon an unwarranted assumption that the officer would not discharge his official duty.

The case at bar is more nearly analogous to the case of *Evans v. Wilhite, supra,* where the clerk entered upon the minutes an order continuing the case; and there it was held that the defendant was justified in relying on this entry, and that no further proceedings were warranted without notice to him.

"A mistake of fact, provided it be honest and genuine, and such as a man might reasonably make, will be a sufficient excuse for not defending an action at law, and will warrant a court of equity, if the judgment be against conscience, in enjoining its enforcement."—23 Cyc. 1012 (X, B, 9, d); *Brown v. Jones*, 44 Ga. 71; 1 Black on Judgments (2d Ed.) §§ 335, 345, 381.

"As a general rule, any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself there, but was prevented by fraud or *accident,* unmixed with any fault or negligence in himself or his agent, will authorize a court of equity to enjoin the adverse party from enforcing such judgment."—23 Cyc. 991 (X, B, 1); *Foshee v. McCreary*, 123 Ala. 493, 26 South. 309; *Watts v. Gayle*, 20 Ala. 817; *Stinnett v. Mobile Branch State Bank*, 9 Ala. 120; 23 Cyc. 1010 (X, B, 9).

The existence of a meritorious defense to the action, which the complaining party was prevented from making by fraud, accident, or *mistake,* unmixed with negligence on his part, is suf-

ficient to render the enforcement of the judgment unconscionable.—*Waddill v. Weaver,* 53 Ala. 58; *Ex parte North,* 49 Ala. 385.

The petition was not subject to the demurrers interposed thereto, and they should have been overruled.

PELHAM, P. J.—I concur in the conclusion reached by Judge BROWN. There is no question in my mind but that, philosophically considered, that determination of the question presented by the record in this case is sound; but I had entertained the opinion that the case of *Henley v. Chabert,* 65 South. 995, was in the way of such a holding on our part, as we are required by statute to conform our holdings to those of the Supreme Court. (See opinion of the Court, per THOMAS, J., on the original consideration of this case, based on the holding in *Henley v. Chabert, supra.*)

I have, on this application, again carefully examined the case of *Henley v. Chabert.* That case is distinguishable from the case in hand, in the first place, because the Supreme Court, in that case, was applying a stricter and more inflexible rule than is applicable here. In the *Henley-Chabert Case* the Supreme Court was considering whether the bill in equity, as framed in that case, was sufficient, or without equity, in its allegations seeking to enjoin a judgment recovered against the complainants in a court of law. In passing upon that question, due regard and consideration were given to the rule of "great strictness and inflexibility" against a judgment recovered in a court of law being supplanted by a proceeding in chancery. I think it fairly inferable, from the opinion read as a whole, that a different rule might have been made to apply to the subject-matter under consideration if the case presented there, as here, had been under the "four months statute" (Code, § 5372), where the parties are shown to have exercised due diligence in making application to the law court for relief, rather than, after long delay, seeking the aid of a court of chancery, as were the facts disclosed by the record in the *Henley-Chabert Case* and pointedly referred to in the opinion in that case, and which entered into the consideration of the conclusion reached in that case.

The case in hand is also distinguishable from the case referred to, as above cited, in that the facts set up in the petition (which are to be taken as admitted on demurrer) aver that the petitioner

relied upon a universal custom of long standing, and well known and acquiesced in by all parties concerned, for attorneys practicing in the courts of Birmingham to depend for information of the setting of cases upon the printed list, or docket, furnished the attorneys for that purpose by the clerk, because of the impracticability of the attorneys examining the various original dockets where such a very large number of cases were pending in the courts of that jurisdiction.   If it was the "universal custom," as alleged by petitioner, for attorneys to rely upon these printed dockets periodically issued by the clerk for this purpose, and this custom was of long standing, recognized, known, and acquiesced in for the good and sufficient reasons set out in the petition by the officers of the court, attorneys, parties, and, in fact, all persons concerned, it does not seem to me that the petitioner's attorneys should be charged with negligence for having recognized the universally prevailing custom and relied upon the printed docket to furnish the information as to the setting of cases, impracticable to be otherwise ascertained.   The consideration of an established custom and the attorneys' reliance upon such a custom in no way entered into the consideration of the case of *Henley v. Chabert, supra.*